[No. D030175. Fourth Dist., Div. One. Dec. 22, 1999.]

RIVERSIDE COUNTY COMMUNITY FACILITIES DISTRICT NO. 87-1, Plaintiff and Respondent, v. BAINBRIDGE 17 et al., Defendants and Appellants.

**[Certified for partial publication.*]**

*This opinion is ordered certified for publication with the exception of part II.

**COUNSEL**

Endeman, Lincoln, Turek & Heater, Henry E. Heater and George H. Kaelin III for Defendants and Appellants.

Sherman & Feller, Susan Feller and Ray W. Sherman, Jr., for Plaintiff and Respondent.

## Opinion

**NARES, J.**—Defendants Bainbridge 17, a California limited partnership (Bainbridge), and Dorothy Burghart (Burghart) (together appellants) appeal a summary judgment in favor of plaintiff Community Facilities District No. 87-1 of the County of Riverside (CFD) on CFD's amended complaint to foreclose liens of special taxes on two properties owned by Bainbridge, and in which Burghart owned an interest.

Appellants contend the court committed reversible error by granting summary judgment in favor of CFD because CFD failed to prove an essential element of its tax lien foreclosure cause of action: the levying of special taxes against the subject properties. In support of this contention, appellants assert the execution of a memorandum of understanding among the parties, and the formation of CFD in this matter, resulted in the levying of a special assessment, rather than a special tax, on their properties because (1) CFD's power to levy taxes on appellants' properties and foreclose on the tax liens is limited and cannot constitutionally go beyond the benefits conferred upon those properties, and (2) CFD and the county did not construct certain public improvements as promised in the memorandum of understanding. In other words, appellants contend CFD proved it levied a special assessment, but failed to prove it levied a special tax, and thus there is no merit to the instant action to foreclose on the special tax liens.

Appellants also assert (among other things) that they presented evidence that created triable issues of material fact whether their nonpayment of the special taxes levied against their properties under the Mello-Roos Community Facilities Act of 1982 (discussed, *post*) was excused by CFD's alleged failure to perform certain alleged contractual obligations for which the taxes constituted consideration.

We reject appellants' claims of error and affirm the entry of summary judgment in favor of CFD. We also conclude CFD as the prevailing party is entitled to reasonable attorney fees and costs incurred on appeal. Accordingly, we remand the matter to the trial court to determine the amount of the award.

### Factual Background

In 1987, the County of Riverside (the County) formed CFD, a community facilities district, under the Mello-Roos Community Facilities Act of 1982 (the Act) codified in Government Code section 53311 et seq.[1] (See

---

[1] Subsequent statutory references are to the Government Code unless otherwise specified.

§§ 53318,[2] 53325.1.[3]) CFD encompasses certain parcels of industrial property along Interstate 215, north of Perris. Bainbridge owns two parcels of real property in CFD. Burghart owns an interest in these properties. Bainbridge is a member of the Greater Perris Valley Industrial Association (GPVIA), which consists of major industrial landowners within CFD.

To promote industrial development within CFD, the County utilized the sale under the Act of tax-exempt Community Facilities District 87-1 Special Tax Bonds (hereafter CFD bonds) as the funding mechanism for financing the construction of public infrastructure (roads and utilities) needed by owners of property in CFD. (§§ 53311.5,[4] 53361.[5])

After forming CFD, the County needed the vote of two-thirds of the property owners within CFD in a special election to authorize the levy of

[2]Section 53318, subdivision (c), provides in part: "Proceedings for the establishment of a community facilities district may be instituted by the legislative body on its own initiative and shall be instituted by the legislative body when any of the following occurs: [¶] . . . [¶] (c) A petition requesting the institution of the proceedings signed by landowners owning the requisite portion of the area of the proposed district, as specified in subdivision (d) of Section 53319, is filed with the clerk of the legislative body."

[3]Section 53325.1, subdivision (a), provides: "If the legislative body determines to establish the district, it shall adopt a resolution of formation establishing the district. The resolution of formation shall contain all of the information required to be included in the resolution of intention to establish the district specified in Section 53321. If a special tax is proposed to be levied in the district to pay for any facilities or services and the special tax has not been eliminated by majority protest pursuant to Section 53324, the resolution shall: [¶] (1) State that the proposed special tax to be levied within the district has not been precluded by majority protest pursuant to Section 53324. [¶] (2) Identify any facilities or services proposed to be funded with the special tax. [¶] (3) Set forth the name, address, and telephone number of the office, department, or bureau which will be responsible for preparing annually a current roll of special tax levy obligations by assessor's parcel number and which will be responsible for estimating future special tax levies pursuant to Section 53340.1. [¶] (4) State that upon recordation of a notice of special tax lien pursuant to Section 3114.5 of the Streets and Highways Code, a continuing lien to secure each levy of the special tax shall attach to all nonexempt real property in the district and this lien shall continue in force and effect until the special tax obligation is prepaid and permanently satisfied and the lien canceled in accordance with law or until collection of the tax by the legislative body ceases. [¶] (5) Set forth the county of recordation and the book and page in the Book of Maps of Assessments and Community Facilities Districts in the county recorder's office where the boundary map of the proposed community facilities district has been recorded pursuant to Sections 3111 and 3113 of the Streets and Highways Code."

[4]Section 53311.5 provides in pertinent part: "This chapter provides an alternative method of financing certain public capital facilities and services, especially in developing areas and areas undergoing rehabilitation. . . . A local government may use the provisions of this chapter instead of any other method of financing part or all of the cost of providing the authorized kinds of capital facilities and services."

[5]Section 53361 provides in part: "Any bonds issued by a district organized under the provisions of this chapter . . . shall be exempt from all taxation within the state."

special taxes for the CFD to pay the principal and interest on any outstanding bonded debt of the CFD. (§§ 53326,[6] 53328,[7] 53358.[8]) The County also needed a vote of two-thirds of the property owners within CFD in a special election to authorize the incurring of the bonded indebtedness. (§§ 53351,[9] 53352,[10] 53353.5,[11] 53356.[12])

---

[6]Section 53326, subdivision (a), provides in pertinent part: "The legislative body shall then submit the levy of any special taxes to the qualified electors of the proposed community facilities district subject to the levy."

[7]Section 53328, subdivision (a), provides: "Except as otherwise provided in subdivision (b), after the canvass of returns of any election pursuant to Section 53326, the legislative body may levy any special tax as specified in the resolution of formation adopted pursuant to subdivision (a) of Section 53325.1 within the territory of the district if two-thirds of the votes cast upon the question of levying the tax are in favor of levying that tax."

[8]Section 53358 provides in pertinent part: "When the legislative body provides for the fixing and levying of special taxes and charges for the community facilities district it shall also provide for the fixing and levying of that amount of special taxes and charges within the community facilities district which is required for the payment of the principal of and interest on any outstanding bonded debt of the community facilities district."

[9]Section 53351 provides in pertinent part: "After the legislative body has made its determination pursuant to Section 53350, if it deems it necessary to incur the bonded indebtedness, it shall by resolution state all of the following: [¶] (a) That it deems it necessary to incur the bonded indebtedness. [¶] (b) The purpose for which the bonded indebtedness will be incurred. [¶] (c) Either of the following in accordance with its previous determination: [¶] (1) That the whole of the district will pay for the bonded indebtedness. [¶] (2) That a portion of the district will pay for the bonded indebtedness, which portion shall be described in the resolution of the board made pursuant to Section 53350. [¶] (d) The amount of debt to be incurred. [¶] (e) The maximum term the bonds to be issued shall run before maturity, which term shall not exceed 40 years. [¶] (f) The maximum annual rate of interest to be paid, payable annually or semiannually, or in part annually and in part semiannually. [¶] (g) That the proposition will be submitted to the voters. [¶] (h) The date of the special community facilities district election (which may be consolidated with a general or special district election including an election to levy a special tax) at which time the proposition shall be submitted to the voters."

[10]Section 53352 provides in pertinent part: "The resolution provided for in Section 53351 shall constitute the notice of such special bond election."

[11]Section 53353.5, subdivision (a), provides: "Propositions relating to the levy of a special tax, [or] the incurring of bonded indebtedness, . . . or any combination thereof, under this chapter, may be combined into one ballot proposition as determined by the legislative body. The . . . election shall be conducted in the same manner as for a special tax election pursuant to Section 53326."

[12]Section 53356 provides: "If more than two-thirds of the votes cast at the election are in favor of incurring the indebtedness, the legislative body may, by resolution, at the time or times it deems proper, provide for the following: [¶] (a) The form of the bonds. [¶] (b) The execution of the bonds. [¶] (c) The issuance of any part of the bonds. [¶] (d) The appointment of one or more banks or trust companies within or without the state having the necessary trust powers as trustee, fiscal agent, paying agent, or bond registrar. [¶] (e) The execution of a trust agreement or indenture securing the bonds. [¶] (f) The pledge or assignment of any revenues of the community facilities district to the repayment of the bonds. [¶] (g) The investment of any bond proceeds and other revenues, including special tax revenues, by the trustee or fiscal agent in any securities or obligations described in the resolution, indenture, trust agreement,

## A. *Memorandum of Understanding*

Bainbridge alleges that in exchange for its promise to vote for the formation of CFD and the sale of the CFD bonds, it (Bainbridge) and the other property owners in CFD demanded that the County enter into a contract with them obligating the County and CFD to build certain public improvements with the proceeds of the sale of the CFD bonds. As a result of the negotiations, the County and the GPVIA (the association of industrial landowners within CFD, including Bainbridge) entered into a memorandum of understanding dated March 23, 1988, and an amended memorandum of understanding dated August 7, 1990.[13] The purchasers of the subsequently issued CFD bonds are not parties to either the original 1988 memorandum of understanding or the 1990 amended memorandum of understanding.

## B. *Authorized Sale of the CFD Bonds*

The property owners in CFD, including appellants, voted to authorize the sale of the CFD bonds, thereby obligating themselves to pay special taxes, secured by a lien on their properties, to pay off the bondholders. On November 1, 1990, as authorized by the Act and with the required vote of two-thirds of the landowners in CFD, the County issued the CFD bonds to pay for the improvements.

## C. *Notice of Special Tax Lien*

On November 19, 1990, a notice of special tax lien was recorded in the County recorder's office, imposing a lien on all nonexempt real property located in CFD (including the two parcels owned by Bainbridge in which Burghart owns an interest) to secure payment of the special taxes to

---

or other instrument providing for the issuance of the bonds. Investment subject to this subdivision shall comply with Section 53356.03. The resolution may provide for payment to the United States from any available revenues of a community facilities district of any excess investment earnings required to be rebated by federal law. [¶] (h) The date or dates to be borne by the bonds and the time or times of maturity of the bonds and the place or places and time or times that the bonds shall be payable. [¶] (i) The interest, fixed or variable, to be borne by the bonds. [¶] (j) The denominations, form, and registration privileges of the bonds. [¶] (k) Any other terms and conditions determined to be necessary by the legislative body."

[13]The parties to the amended memorandum of understanding included the County, its redevelopment agency, the GPVIA, and others. It appears from the record that this amended memorandum of understanding, a copy of which is part of the record on appeal by stipulation of the parties, was not submitted into evidence during the summary judgment proceeding that is the subject of this appeal.

be levied annually for the purpose of paying principal and interest on the CFD bonds. (§ 53325.1, subd. (a)(4).[14])

### D. *Underlying GPVIA Action*

On October 10, 1995, Bainbridge and others filed suit against the County, CFD, and others (*Greater Perris Valley Industrial Assn. v. County of Riverside* (Super. Ct. San Diego County, 1995, No. 704058), hereafter the GPVIA action). The GPVIA complaint asserted 14 causes of action and alleged the defendants (among other things) failed to complete the public improvements as promised in the 1988 memorandum of understanding (discussed *ante*), and defendants fraudulently induced Bainbridge and the other plaintiffs to enter into that memorandum of understanding, to vote for the formation of the CFD and another community facilities district (CFD 88-8), and to vote for the levy under the Act of special taxes on the properties in CFD.

### E. *Appellants' Default on Payment of Special Taxes*

Appellants defaulted on their obligation to pay the 1995-1996 and 1996-1997 CFD taxes levied against their two properties. In June 1996 and June 1997, the Riverside County Board of Supervisors, acting as the CFD legislative body, adopted resolutions ordering the filing of the instant action to foreclose the liens of special taxes imposed on the two properties.

### PROCEDURAL BACKGROUND

### A. *Instant Action*

In April 1997 CFD, acting on behalf of the bondholders under sections 53356.1 and 53356.4,[15] sued appellants to foreclose the lien of special taxes (discussed *ante*). In their answers, appellants admitted they had not paid "some taxes" CFD claimed they owed, but raised the affirmative defenses that CFD was contractually obligated to provide improvements with the "tax assessments"; CFD's "failure to do so resulted in lack of consideration under the contract"; and appellants' nonpayment of taxes was excused by CFD's failure to timely complete the improvements.

### B. *CFD's Motion for Summary Judgment*

CFD moved for summary judgment. In their memorandum of points of authorities in opposition to the summary judgment motion, appellants argued

---

[14]See footnote 3, *ante*.

[15]The pertinent provisions of sections 53356.1 and 53356.4 are set forth, *post*, in footnotes 21 and 16, respectively.

the motion should be denied because the facts established as a matter of law that the execution of the 1988 memorandum of understanding and the formation of CFD in this matter had resulted in the levying of a special assessment, rather than a special tax, on appellants' properties, and thus CFD had failed to prove an essential element of its case: the levying of special taxes against the subject properties. Appellants also opposed the summary judgment motion on the ground there were triable issues of material fact with respect to their affirmative defense that their nonpayment of taxes was excused because CFD's failure to timely complete the improvements promised in the 1988 memorandum of understanding constituted a failure of consideration.

The court granted CFD's summary judgment motion. Citing section 53325.3, which provides in part that "[a] tax imposed pursuant to this chapter is a special tax and not a special assessment," the court rejected as unsupported the appellants' contention that the special tax at issue in the instant action is a special assessment. The court also ruled that CFD was not a party to the 1988 memorandum of understanding, which did not create a triable issue of fact whether the special taxes levied in this matter were special assessments. Finally, the court ruled that none of the case law authorities cited by appellants in their written opposition to CFD's motion supported the conclusion there was a triable issue of material fact whether the special taxes levied in this matter were special assessments.

## C.  *Judgment and Appeal*

On November 6, 1997, the court entered the judgment of foreclosure and order of sale in favor of CDF. On January 5, 1998, appellants filed their timely notice of appeal.

### STANDARD OF REVIEW

■ In evaluating the propriety of a grant of summary judgment our review is de novo, and we independently review the record before the trial court. (*Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189 [43 Cal.Rptr.2d 392].) In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment. (*Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1121-1122 [63 Cal.Rptr.2d 359].)

Under Code of Civil Procedure section 437c, subdivision (c), a motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Because the granting of a summary judgment motion involves pure questions of law, we are required to reassess the legal significance and effect of the papers presented by the parties in connection with the motion. (*Ranchwood Communities Limited Partnership v. Jim Beat Construction Co.* (1996) 49 Cal.App.4th 1397, 1408 [57 Cal.Rptr.2d 386] (*Ranchwood*).)

We apply the same three-step analysis required of the trial court in ruling on a motion for summary judgment. (*Ranchwood, supra,* 49 Cal.App.4th at p. 1408.) First, we identify the issues framed by the pleadings because the court's sole function on a motion for summary judgment is to determine from the submitted evidence whether there is a "triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).) ■ To be "material" for purposes of a summary judgment proceeding, a fact must relate to some claim or defense in issue under the pleadings, and it must also be essential to the judgment in some way. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 926 [68 Cal.Rptr.2d 571] (*Zavala*).)

Second, we determine whether the moving party has met its statutory burden of proof. (*Zavala, supra,* 58 Cal.App.4th at p. 926.) Where (as here) a plaintiff is the moving party, we determine whether the plaintiff has met its burden under Code of Civil Procedure section 437c, subdivision (o)(1), of showing there is no defense to a cause of action because the admissible evidence produced by the plaintiff proves "each element of the cause of action entitling the party to judgment on that cause of action."

Finally, if the moving party has met its statutory burden of proof and the summary judgment motion prima facie justifies a judgment, the burden shifts to the opposing party and we determine whether that party has met its burden under Code of Civil Procedure section 437c. (*Zavala, supra,* 58 Cal.App.4th at p. 926; Code Civ. Proc., § 437c, subd. (o)(1), (2).) Where (as here) the defendants are the opposing parties, we determine whether they have met their burden under subdivision (o)(1) of Code of Civil Procedure section 437c of producing admissible evidence showing that "a triable issue of one or more material facts exists as to that cause of action or a defense thereto." ■ In making this determination, we strictly construe the evidence of the moving party and liberally construe that of the opponents, and any doubts as to the propriety of granting the motion should be resolved in favor of the parties opposing the motion. (*Kelly v. First Astri Corp.* (1999) 72 Cal.App.4th 462, 471 [84 Cal.Rptr.2d 810].)

DISCUSSION

I. *The Levied Amounts Are Special Taxes, Not Special Assessments, as a Matter of Law*

Appellants first contend the court committed reversible error in granting summary judgment in favor of CFD because CFD failed to prove an essential element of its tax lien foreclosure cause of action: The levying of special taxes against the subject properties under the Act.[16] We reject this contention.

In paragraph nine of its unverified complaint, CFD alleged (among other things) that, "[t]he *CFD taxes levied against each PARCEL pursuant to the Act* are delinquent." (Italics added.)

In their separate answers to the complaint, appellants each admitted this allegation by asserting, "[w]ith respect to the allegations in paragraph 9, admits only that [defendant] may not have paid *some taxes* that [CFD] claims are owed . . . ." (Italics added.)

CFD argues that appellants' answers[17] to the complaint constitute binding judicial admissions that the charges levied against their properties are special taxes authorized under the Act, not special assessments. Appellants dispute that their admission that they may not have paid "some taxes" constitutes a judicial admission that the charges levied against their properties constitute special taxes under the Act.

We conclude that even if appellants' answers to the complaint do not constitute judicial admissions that the charges levied against their properties are special taxes levied under the Act, the statutory scheme expressly set forth in the Act and the undisputed material facts in this matter establish as a matter of law that those charges are special taxes levied under the Act.

---

[16]The essential elements of an action under the Act to foreclose the lien of special tax are set forth in section 53356.4, which provides in part: "The complaint may be brief and need only include the following allegations: [¶] (a) That on a stated date, *a certain sum of special taxes, levied against the subject property* (describing it) *pursuant to this chapter*, became delinquent. [¶] (b) On that date, bonds issued pursuant to this chapter, payable in whole or in part by the subject special taxes, were outstanding. [¶] (c) That the legislative body or trustee has ordered the foreclosure." (Italics added.)

Appellants do not contest that CFD, as the moving party, met its statutory burden of proof on summary judgment with respect to the remaining essential elements of its foreclosure cause of action: the delinquency of a certain levied sum on a stated date, and the existence of bonds that were issued under the Act, payable in whole or in part by the subject special taxes, and that were outstanding on the date in question.

[17]Although CFD contends the answers are verified, the record indicates the verification statement at the end of each answer filed with the court is unsigned.

Turning first to the statutory scheme, we note the Act refers expressly, repeatedly, and unambiguously to the levying of a "special tax," rather than the levying of a special assessment. For example, section 53321, which sets forth the required contents of a resolution of intention for the establishment of a community facilities district, provides in part in subdivision (d): "Proceedings for the establishment of a community facilities district shall be instituted by the adoption of a resolution of intention to establish the district which shall do all of the following: [¶] . . . [¶] (d) State that, except where funds are otherwise available, a *special tax* sufficient to pay for all facilities and services, secured by recordation of a continuing lien against all nonexempt real property in the district, will be annually levied within the area. The resolution shall specify the rate, method of apportionment, and manner of collection of the *special tax* in sufficient detail to allow each landowner or resident within the proposed district to estimate the maximum amount that he or she will have to pay." (Italics added.)

Section 53325.1, which sets forth the required contents of an adopted resolution of formation establishing a community facilities district, also repeatedly refers to "special tax" and provides in part in subdivision (a): "If the legislative body determines to establish the district, it shall adopt a resolution of formation establishing the district. The resolution of formation shall contain all of the information required to be included in the resolution of intention to establish the district specified in Section 53321. If a *special tax* is proposed to be levied in the district to pay for any facilities or services and the *special tax* has not been eliminated by majority protest pursuant to Section 53324, the resolution shall: [¶] (1) State that the proposed *special tax* to be levied within the district has not been precluded by majority protest pursuant to Section 53324. [¶] (2) Identify any facilities or services proposed to be funded with the *special tax*. [¶] . . . [¶] (4) State that upon recordation of a *notice of special tax* lien . . . a continuing lien to secure each *levy of the special tax* shall attach to all nonexempt real property in the district and this lien shall continue in force and effect until the *special tax obligation* is prepaid and permanently satisfied and the lien canceled in accordance with law or until collection of the *tax* by the legislative body ceases." (Italics added.)

Section 53326, subdivision (a), provides in part that "[t]he legislative body shall . . . submit the levy of any *special taxes* to the qualified electors of the proposed community facilities district subject to the levy . . . ." (Italics added.) Section 53328, subdivision (a), sets forth the requirements for the levying of the "special tax" and provides in part that, "after the canvass of returns of any election pursuant to Section 53326, the legislative

body may levy any *special tax* as specified in the resolution of formation adopted pursuant to subdivision (a) of Section 53325.1 within the territory of the district if two-thirds of the votes cast upon the question of levying the *tax* are in favor of levying that *tax*." (Italics added.) The purpose of the Act, as set forth in section 53311.5, is to "provide[] an alternative method of financing certain public capital facilities and services, especially in developing areas and areas undergoing rehabilitation. . . ." Section 53340, subdivision (d), governs the use of the proceeds of a "special tax" levied under the Act, and provides that "[t]he proceeds of any *special tax* may only be used to pay, in whole or part, the cost of providing public facilities, services, and incidental expenses pursuant to this chapter." (Italics added.)

Appellants contend the execution of the 1988 memorandum of understanding and the formation of CFD in this matter resulted in the levying of special assessments, rather than special taxes, against their properties because under the decisions in *Rohwer v. Gibson* (1932) 126 Cal.App. 707 [14 P.2d 1051] (*Rohwer*), *American Alliance Ins. Co. v. State Bd. of Equalization* (1982) 134 Cal.App.3d 601 [184 Cal.Rptr. 674, 30 A.L.R.4th 865] (*American Alliance*), and *Arvin Union School Dist. v. Ross* (1985) 176 Cal.App.3d 189 [221 Cal.Rptr. 720] (*Arvin*), CFD's power to levy taxes against appellants' properties and foreclose on the tax liens is limited and cannot constitutionally go beyond the benefits conferred upon those properties, as (appellants contend) occurred in the instant case.

In support of their contention that CFD is improperly attempting to foreclose on property subject to special assessments, appellants also rely on a 1979 opinion of the California Attorney General for the proposition that " '[a] charge imposed only on property owners benefited is a special assessment, rather than a tax, notwithstanding the statute calls it a tax. . . .' " (See *Recreation and Park District Tax Levy,* 62 Ops.Cal.Atty.Gen. 747, 751 (1979).)

Appellants' reliance on these authorities is misplaced. Turning again to the provisions of the Act, we note that section 53325.3 expressly and unambiguously provides that a tax imposed under the Act is a "special tax," not a special assessment, and such a tax may be based on a benefit received by parcels of real property: "*A tax imposed pursuant to this chapter is a special tax and not a special assessment,* and there is no requirement that the tax be apportioned on the basis of benefit to any property. However, *a special tax levied pursuant to this chapter may be on or based on a benefit received by parcels of real property*, the cost of making facilities or authorized services available to each parcel, or some other reasonable basis as

determined by the legislative body." (Italics added.) The Act was enacted in 1982. (§ 53311.)[18] Any doubt as to whether the Legislature intended the provisions of the Act to prevail over existing case law—such as the 1932 *Rohwer*, 1982 *American Alliance*, and 1985 *Arvin* decisions—and other authorities such as the 1979 opinion of the Attorney General (discussed, *ante*) on which appellants rely, was dispelled by the enactment in 1986 of section 53312 (added by Stats. 1986, ch. 1102, § 2, p. 3847, eff. Sept. 24, 1986). This section is part of the Act and provides that "[a]ny provision in this chapter which conflicts with any other provision of law shall prevail over the other provision of law." (*Ibid.*)

In any event, the *Rohwer* and *American Alliance* decisions are inapposite for other reasons. *Rohwer*, an old decision that involved California reclamation district laws, recognized that each law authorizing the issuance of bonds must be examined separately to determine its terms. (*Rohwer, supra*, 126 Cal.App. at p. 719.) The *American Alliance* decision involved the issue of whether a tax imposed on workers' compensation carriers by the State of Arizona was a special purpose obligation or assessment within the meaning of the California Constitution or Insurance Code. (*American Alliance, supra*, 134 Cal.App.3d at pp. 604-606.)

The *Arvin* decision actually supports the granting of summary judgment in the instant action. In *Arvin*, which involved the issue of whether the plaintiff public school districts were entitled to collect property taxes assessed at rates established by override elections before the passage of Proposition 13 (Cal. Const., art. XIII), the Court of Appeal held that a voted override under the Education Code is not a special assessment. (*Arvin, supra*, 176 Cal.App.3d at p. 200.) ██ In explaining the difference between a special assessment and a property-related special tax, the *Arvin* court recognized that a "special tax" can benefit, but need not benefit, the taxed property: " 'A "special tax" is a tax collected and earmarked for a special purpose, rather than being deposited in a general fund. [Citations.] . . .' [;] '[a] special assessment is distinguishable from a property-related special tax by the fact that a special assessment, being a charge for benefits conferred upon the property, cannot exceed the benefits the assessed property receives from the improvement; *a special tax on real property need not so specifically benefit the taxed property.* [Citations.]' [Citation.]" (*Ibid.*, italics added.)

██ The undisputed material facts in the instant case, when viewed in light of the provisions and purpose of the Act (discussed, *ante*), also show

---

[18]Section 53311 provides: "This chapter shall be known and may be cited as the 'Mello-Roos Community Facilities Act of 1982.' "

the charges levied against appellants' properties are special taxes under the Act, not special assessments, as a matter of law. The 1988 memorandum of understanding itself states that the County established CFD under the Act by the adoption of a resolution on December 8, 1987, and that CFD was "formed for the purpose of providing financing for the construction and/or acquisition of certain public facilities" through the issuance and sale of bonds.

It is undisputed a notice of special tax lien was recorded in this matter in the County recorder's office on November 19, 1990 (after the execution of the 1988 memorandum of understanding and the 1990 amended memorandum of understanding), which imposed a lien on all nonexempt real property located in CFD (including the two parcels owned by Bainbridge in which Burghart also owns an interest). The notice of special tax lien states (among other things) that "[t]he *special taxes* are authorized to be levied within and for [CFD]," and "[t]he *lien of the special taxes* is a continuing lien which shall secure each annual levy of the *special taxes* and shall continue in force and effect until the *special tax obligation* is prepaid, permanently satisfied, and canceled in accordance with law or until the *special taxes* cease to be levied and a *notice of cessation of special tax* is recorded in accordance with Section 53330.5[19] . . . ." (Italics added.) It also states that "[n]otice is further given that upon recording of this notice . . . , the *obligation to pay the levies of the special taxes* shall become a lien upon all nonexempt real property within [CFD] . . . ." (Italics added.)

It is also undisputed that on November 1, 1990, as authorized by the Act and with the required vote of two-thirds of the landowners in CFD, the County issued the CFD bonds to pay for the improvements. The official statement for the CFD bonds states in part that the bonds "are authorized pursuant to the [Act], and . . . are payable from the proceeds of an annual *Special Tax* . . . to be levied on and collected from property within [CFD]. The *Special Tax* is to be levied according to the rate and method of apportionment approved by the Board of Supervisors of [the County], acting as the legislative body of [CFD], and the qualified electors of [CFD]. [¶] The *Special Tax* will be collected in the same manner and at the same time as ad

---

[19]Section 53330.5 provides in part: "When the legislative body determines that the *special tax* shall cease to be levied, the legislative body shall direct the clerk to record a *Notice of Cessation of Special Tax* which shall state that the obligation to pay the *special tax* has ceased and that the lien imposed by the *Notice of Special Tax Lien* recorded in Book _____, and Page _____ of the records of the County Recorder of _____ County, State of California, is extinguished. The *Notice of Cessation of Special Tax* shall additionally identify the book and page of the Book of Maps of Assessment and Community Facilities Districts wherein the map of the boundaries of the district is recorded." (Italics added.)

valorem property taxes are collected by the Treasurer-Tax Collector of [the County] . . . ." (Italics added.)

In sum, we conclude the undisputed material facts, viewed in light of the provisions and purposes of the Act, establish that the charges levied against appellants' properties in this matter are special taxes within the meaning of the Act as a matter of law, and thus CFD, as the moving party in the subject summary judgment proceeding, met its burden of presenting admissible evidence establishing all essential elements of its tax lien foreclosure cause of action, including the levying of special taxes against the subject properties under the Act. (§ 53356.4.)[20]

II. *Failure or Lack of Consideration Does Not Constitute a Defense to a Foreclosure Action Under the Act*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *Revenue and Taxation Code Section 4807*

Appellants next assert that Revenue and Taxation Code section 4807,[25] which bars legal action to "prevent or enjoin the collection of property taxes," does not apply because (1) this section does not apply to taxes levied under the Act, and (2) they are not attempting to enjoin the collection of any taxes. Appellants contend reversal of the summary judgment in favor of CFD thus will not violate this section. ■ We conclude appellants' assertion of their lack or failure of consideration affirmative defense in the instant foreclosure action under the Act is barred as a matter of law under Revenue and Taxation Code section 4807.

Special taxes levied under the Act are collected, in the first instance, on the secured tax roll in the same manner as ad valorem property taxes and are subject to the same penalties on delinquency, that is, a tax collector's sale occurring more than five years after delinquency. (§ 53340, subd. (e);[26] Rev.

---

[20]See footnote 16, *ante.*

\*See footnote, *ante,* page 644.

[25]Revenue and Taxation Code section 4807 provides in part: "No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against any county, municipality, or district, or any officer thereof, to prevent or enjoin the collection of property taxes sought to be collected."

[26]Section 53340, subdivision (e), provides: "The special tax shall be collected in the same manner as ordinary ad valorem property taxes are collected and shall be subject to the same penalties and the same procedure, sale, and lien priority in case of delinquency as is provided

& Tax. Code, § 3691.[27]) However, if that were the only remedy, bonds issued under the Act would be well into default before the property could be sold and, as a practical matter, those bonds would be difficult if not impossible to market. Consequently, the Legislature provided that if outstanding bonds issued under the Act are payable by delinquent special taxes levied for payment of that debt, the legislative body may order, as a "cumulative" remedy to a tax collector's sale, that the delinquent taxes be collected by an immediate action to foreclose the lien of special tax. (§§ 53356.1, subd. (a),[28] 53356.4.[29]) In this regard, the foreclosure remedy is solely for the benefit of the bondholders by facilitating prompt payment to them.

Appellants claim they are not seeking to enjoin collection of unpaid taxes. However stated, appellants' defense requests the court find the special taxes are invalid because of claimed construction irregularities by CFD and the County, and they effectively seek to prevent collection of these taxes by precluding a judgment of foreclosure. This they cannot do. As already discussed, Revenue and Taxation Code section 4807 provides that "[n]o injunction or writ of mandate or other legal or equitable process shall issue in any suit . . . in any court against any county, municipality, or district . . . to prevent or enjoin the collection of property taxes sought to be collected."[30] The policy behind this provision is "to allow revenue collection to continue during litigation . . . ." (*Merced County Taxpayers' Assn. v. Cardella, supra,* 218 Cal.App.3d at p. 400; see also *Pacific Gas & Electric Co. v. State Bd. of Equalization* (1980) 27 Cal.3d 277, 283 [165 Cal.Rptr. 122, 611 P.2d 463] [purpose of constitutional provision against preventing or enjoining collection of tax is to allow revenue collection during litigation]; *State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 638-639 [217 Cal.Rptr. 238, 703 P.2d 1131] [taxpayer not entitled to the delays of

---

for ad valorem taxes, unless another procedure has been authorized in the resolution of formation establishing the district and adopted by the legislative body."

[27]Revenue and Taxation Code section 3691, subdivision (a)(1), provides in part: "Five years or more after the property has become tax defaulted, the tax collector shall have the power to sell and shall attempt to sell in accordance with Section 3692 all or any portion of tax-defaulted property that has not been redeemed, without regard to the boundaries of the parcels, as provided in this chapter, unless by other provisions of law the property is not subject to sale."

[28]The provisions of section 53356.1, subdivision (a), are set forth in footnote 21, *ante.*

[29]Section 53356.4 (discussed in fn. 16, *ante*) sets forth the essential elements of an action to foreclose the lien of special tax under the Act.

[30]The Legislature enacted this section to conform with California Constitution, article XIII, section 32, which provides in part that "[n]o legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax." (See *Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 400-401 [267 Cal.Rptr. 62].)

litigation].) Thus, any legal action or defense seeking "prepayment adjudication that would effectively prevent the collection of a tax [is] barred." (*McKendry v. County of Kern* (1986) 180 Cal.App.3d 1165, 1170 [226 Cal.Rptr. 45].) Where, as here, it is undisputed that special taxes levied under the Act remain unpaid, the court cannot prevent or enjoin the collection of those taxes.

### IV. *Conflicting Rulings*

Appellants also contend the summary judgment in favor of CFD in this matter must be reversed because the court ruled that CFD was not a party to the original 1988 memorandum of understanding, but later issued a conflicting ruling in phase one of the bench trial in the underlying *GPVIA* action (discussed, *ante*) that CFD was a party to the 1990 amended memorandum of understanding. We reject this contention.

Appellants assert the "crux" of the court's decision to grant summary judgment in favor of CFD in this matter was the court's finding that CFD was not a party to the 1988 memorandum of understanding. They also assert this finding was the basis for the court's dismissal of their argument in opposition to CFD's summary judgment motion that a special assessment (not a special tax) was levied against their properties based upon the 1988 memorandum of understanding.

It appears appellants are contending that the court's post-summary-judgment ruling that CFD was a party to the 1990 amended memorandum of understanding shows there is a triable issue of material fact as to whether the amended memorandum of understanding provides appellants with a lack of consideration affirmative defense to the tax lien foreclosure action at issue in this appeal.[31] This contention, however, is unavailing. For reasons already discussed, we have concluded that appellants' claim that CFD failed to perform certain contractual obligations does not excuse their nonpayment of special taxes levied against their properties under the Act, and thus is not a defense to the instant special tax lien foreclosure action as a matter of law. Thus, even if the court's rulings are in conflict, as appellants contend, any such conflict is immaterial to the determination of the issues raised in the instant appeal.

### V. *Attorney Fees*

Having concluded the court properly granted summary judgment in favor of CFD on its complaint to foreclose lien of special taxes, we further

---

[31]In their appellants' reply brief, appellants argue that "[t]he key issue in this appeal is to what extent the amended [memorandum of understanding] contract provides defenses to the foreclosure action."

conclude CFD was entitled to reasonable costs and attorney fees, calculated up to the date of judgment, under section 53356.5.[32]

CFD, as prevailing party, requests costs and attorney fees on appeal. ▮ Statutory authorization for recovering attorney fees in the trial court necessarily includes attorney fees incurred on appeal unless the statute specifically provides otherwise. (*Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 927 [275 Cal.Rptr. 187, 800 P.2d 543]; *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139, 1153-1154 [67 Cal.Rptr.2d 543].) Because section 53356.5 authorizes such an award, CFD is entitled to reasonable attorney fees, as well as costs, on appeal.

### DISPOSITION

The judgment is affirmed. The case is remanded to the superior court to determine and award reasonable statutory attorney fees and costs to CFD for this appeal.

Work, Acting P. J., and O'Rourke, J., concurred.

---

[32]Section 53356.5, subdivision (b), provides: "The judgment amount shall include reasonable attorneys' fees to be fixed by the court, together with interest, penalties, and other authorized charges and costs (all calculated up to date of judgment)."