[Civ. No. 2270. Fourth Appellate District.—May 8, 1939.]

T. B. RUSSELL et al., Appellants, v. MARGARET ZINK et al., Respondents.

Harvey, Johnston & Baker for Appellants.

W. R. Bergman, H. J. Gwartney and Borton, Petrini & Conron, for Respondents.

BARNARD, P. J.—This is an action to quiet title to 110 acres of land in Kern County.

In June, 1924, J. J. Fagan and C. F. Ramsey purchased this land for $5,500, paying half in cash and giving a note for $2,750, secured by a trust deed on the land. In July, 1924, for a cash consideration of $1500, an undivided one-third interest in this property was conveyed to O. C. Zink and his wife, subject to the existing trust deed. In November, 1924, in consideration of $1500, Ramsey and his wife conveyed to the plaintiffs herein their undivided one-third interest in this land, subject to said trust deed.

In February, 1931, the bank which held this trust deed began to press for payment, the note having become due. There was then no delinquency with respect to interest and taxes. After some negotiations concerning the best manner of taking care of the trust deed, including a suggestion that the property be divided between the three owners, Fagan and

Zink and their wives conveyed their interest in the property to the plaintiffs by a grant deed dated April 7, 1931. As a part of the same transaction, an "agreement to convey real estate" was executed by the plaintiffs and Mr. and Mrs. Fagan, which provided that the plaintiffs "agree to sell" and the Fagans "agree to buy" an undivided one-third interest in this land. The agreement then recited that the property was subject to a trust deed for $2,750, with accruing interest and taxes; that the sellers might pay this off or re-encumber the property with a similar trust deed; that the price which the buyers "agree to pay" for the one-third interest in the land "is one-third of $2750 cash and one-third of any additional expenses or charges in the way of interest on the $2750 encumbrance, taxes, or other charges incurred"; that on receipt of these amounts, "together with charges incident to assignment or transfer", the sellers agree to convey a one-third interest in the property to the buyers; and that the buyers agree to pay the sellers "promptly as same are incurred, one-third of the interest on $2750 and one-third of the taxes, and other expenses incurred by the sellers on said property". It is then provided that "if this option to purchase or agreement to purchase is not consummated by the Buyers within three years from this date, that this agreement to purchase shall become null and void and that in that event Sellers shall not be required to issue deed". An identical agreement between the Zinks and the plaintiffs was executed at the same time. On April 20, 1931, the plaintiffs paid off the trust deed and the usual reconveyance was executed by the trustee and recorded.

An oil lease covering the property was executed by the plaintiffs on June 20, 1936, and on September 23, 1936, they brought this action seeking to quiet their title to the entire tract. Zink and his wife answered alleging that the deed to the plaintiffs and the agreement to convey had been executed as security for sums to be advanced by the plaintiffs in paying off the trust deed and for further advances for interest, taxes and expenses, claiming to be the owners of an undivided one-third interest in the property, and asking the court to determine the respective interests of the parties. A similar answer was filed by Fagan. The court found that the plaintiffs are the owners of an undivided one-third interest in this prop-

erty; that they paid the trust deed debt pursuant to an agreement with the other parties that they should be secured therefor by a deed conveying the interests of the other parties, respectively, which deed, though absolute in form, was intended as security for such indebtedness; that in pursuance of such agrecment the respective agreements to convey were executed and the plaintiffs paid off the trust deed; and that this equitable mortgage constitutes a valid and subsisting lien on the undivided two-thirds interest in said land owned by the Zinks and the Fagans. The amounts owed to the plaintiffs by the Zinks and the Fagans, respectively, were stipulated and a judgment was entered decreeing that the plaintiffs were the owners of an undivided one-third interest in this property and that the Fagans and the Zinks each own an undivided one-third interest therein, subject to the respective amounts owed by them to the plaintiffs, and subject to certain interests owned by other parties which are not involved on this appeal.

From this judgment the plaintiffs have appealed. In asserting that the evidence is insufficient to support the finding that this was an equitable mortgage they argue that there was no surviving debt since the trust deed indebtedness was extinguished, that the amount paid by them was the full value of the property, that the parties considered the transaction a full conveyance with an option to repurchase and acted accordingly, and that the Zinks did not have title to a one-third interest in the property at the time of the transaction in question. Although the appellants paid off the original debt, which was a lien upon the interests of the respective parties, if the money so used was advanced as a loan, in so far as the other parties are concerned, and their interests in the land taken as security therefor, there was a surviving debt which could be the basis of an equitable mortgage. Assuming that there is a conflict in the evidence, a portion thereof would amply sustain a finding that the amount which the appellants claim to have paid for a two-thirds interest in this property was far less than its value at that time. The evidence relating to the intention of the parties with respect to the nature of this transaction is conflicting. The contention that the Zinks had no title at the time in question is based upon a technical defect in the original deed to them, which defect was later corrected. Not only is this matter

immaterial here, but the evidence supports the finding that a one-third interest in this property belonged to the Zinks. The only question requiring consideration is whether the evidence sustains the court's findings and conclusion to the effect that the transactions in question constituted an equitable mortgage securing the appellants for advances made by them.

The testimony of Zink and Fagan, with letters written by Fagan and the appellant T. B. Russell, both before and after the expiration of three years from the date of this transaction, abundantly support the court's findings. Among other things, Zink testified that when the bank demanded payment of the trust deed he and Russell endeavored to obtain a new loan without success; that while he and Russell were discussing the possibility of dividing the property Russell said: "I probably can take care of that loan myself"; and that he held a conversation with Russell in which it was said that a deed would be given him to secure any loan that might be made, that the rate of interest would be the same as the trust deed then on the property, 7 per cent payable quarterly, and that "we would carry on as we had in the past, pay our proportionate share of all expenses, interest and taxes and any kind of special assessments. It was to be carried on the same as it had in the past." He further testified that nothing was said at any time about Russell buying the whole property; that in his presence Russell told Fagan that when the deed and agreement to convey were signed he would see that the bank was paid off and loan the money on the property; that he and Fagan both said they were willing to pay Russell any expenses incidental to getting the money; that he subsequently paid Russell his share of the "charges on the loan", the abstract charges, and his share of certain taxes, and that he later paid Russell $25 to apply "on my account". He then testified that his intention was that the deed was to be given as security for the loan made by Russell.

Fagan testified to the same general effect. He identified a letter which he had written to Russell on September 10, 1934, more than three years after the deed and agreement were executed, in which he suggested that the land be divided, that there was a chance to sell thirty acres of it for $1500, that he was in favor of doing this and applying the proceeds "to reducing indebtedness to you and holding the remaining 80,

3 ways, or you may consider this my ⅓rd and sell for that amount, deduct your bill against me and close out my account, or Zink may take my place in this transaction, or any other similar division you might care to make. You could pay me off on that basis or keep it all if you wish''. He identified a letter written to him by Russell under date of September 13, 1934, in which Russell referred to his letter of September 10th, and said he would do some figuring and see Fagan on September 16th. He testified that they met on September 16th; that he told Russell he was reluctant to be obligated to him for so much money for so long, and would prefer to make a sacrifice so that Russell could get his money; and that Russell objected to selling a part of the land, talked of the possibility of securing an oil lease and stated that ''he would continue to carry the loan and go just the same as he had been''. He further testified that during the negotiations which led to this transaction the word ''sale'' was never used by the parties, and that in discussing the matter they used the words ''security'' or ''loan''.

The testimony of Zink and Fagan is strongly corroborated by a portion of the testimony of Russell. He testified that Zink and Fagan came to his office in Los Angeles; that there was talk of dividing the property, which was not done; that he, as a part owner, had an interest in renewing the loan; and that he told them he would buy the property outright and give them three years in which to buy it back. He further testified that he charged Zink and Fagan with the expenses of the transfer, and that he charged them with a further amount based on interest he lost by taking his money out of a savings account. He identified a letter he wrote to Fagan on May 11, 1931, in which he set forth that Fagan owed him $12 as his share of ''charge for a loan, $36.00'', together with his share of taxes, interest and abstract charges totaling $61.88. He testified that the $36 charge for a loan was to reimburse him for the loss of interest he sustained by taking his money out of a savings bank during the middle of a six-months period. He then identified a memorandum signed by him and sent to Fagan charging him with his one-third of interest due July 22, 1931, in the sum of $16.04, his one-third of interest due on October 22, 1931, $16.04, and his share of the 1931 taxes. It is significant that these items of

interest are exactly one-third of the quarterly interest on $2,750 at 7 per cent and are for interest which accrued after the deed and agreement were delivered. In this connection he testified that he ''expected them to continue to pay interest the same as we had been paying''. He further testified that Zink paid his share of the transfer charges at the time of the transaction and at a later time ''made a payment of $25.00'', and that Zink had owed him no money except as arising from this transaction. On December 31, 1931, Russell wrote Fagan ''I feel we are still all interested in the 110''. He testified that he meant Fagan, Zink and himself. On August 14, 1933, Fagan, in a letter to Russell, said: ''Whenever your load becomes too great to carry on mine and Zink's account I will do what I can to aid, and cheerfully, under any plan you might have.'' On January 19, 1934, Russell wrote a letter to Fagan relating to the leasing of the premises in which he said: ''Anything we can get this year, to help carry on is worthwhile''. On September 10, 1934, Fagan wrote Russell about a proposed sale of thirty acres for $1500 and saying he was in favor of accepting the same and applying the proceeds ''to reducing indebtedness to you and holding the remaining 80, 3 ways''. On September 13, 1934, Russell wrote Fagan that he had been doing some figuring and would see him on the 16th. We have already referred to Fagan's testimony as to what occurred when they met on September 16th.

Russell's deposition was taken on October 30, 1937. He was then asked whether he had not discussed the leasing or selling of the property with Fagan, and conferred with Zink about the proposals or suggestions Fagan had made, during the period from April, 1931, to June, 1936. He replied: ''Naturally. We were all in the deal together and we discussed the different angles, everything that came up. No question about that.'' Two months later he amended this answer by adding: ''Up to the time the option expired I was willing to do anything I could that would help them take up their option.'' On May 17, 1935, Fagan wrote Russell about the proposed sale of part of the property at $70 per acre. Russell answered under date of May 21, 1935, saying that he agreed with Fagan that the property should not be so tied up that ''you will not be able to take advantage of a good deal should such a thing show up''. On July 31, 1935, Fagan

wrote Russell that a certain party had offered $2,500 cash for forty acres of the property, stating that he would be glad if Russell would accept this "and apply on account and hold the balance of the land, 70 acres, for the balance of your account, including all expenses, and compound interest to date". Russell wrote Fagan on August 2, 1935, thanking him for his letter of July 31st, saying he was not interested in the sale proposition, that he thought it poor business to sell off the best portion, and that "there is not much difference in what it will cost to carry the whole against a portion of it. I would rather wait a little longer if necessary, and take a chance on a better deal later." On December 18, 1935, Russell wrote Fagan saying he thought it would be foolish to sell a part of the place and that "I feel things will pick up and we will have a better opportunity later on". Russell further testified that he made an oil lease on the land on June 20, 1936, that he talked over the possibility of leasing it with Fagan but did not discuss the matter with Zink. He also testified when the transaction in question was made "the program was that they were to pay (him) interest at the rate of 7% per annum, payable quarterly".

The evidence fully sustains the court's finding that this was an equitable mortgage, and further comment is unnecessary. Appellants rely upon the case of *Davis* v. *Stewart*, 31 Cal. App. (2d) 574 [88 Pac. (2d) 734], in which it was held that where a debt is extinguished when a deed is given the fact that an option to repurchase is also given is not sufficient to show that the deed was an equitable mortgage. In that case, as the court pointed out, the written declaration of the parties and all of the evidence showed that the transaction was intended as an absolute transfer of the property. In the instant case, the debt was not extinguished but a new debt was created at the time the transaction was consummated. A part of the evidence, including much of the testimony of the appellant T. B. Russell, is entirely at variance with the theory of an absolute transfer of this land. While a conflict appears, the evidence supports the findings and conclusion to the effect that this was an equitable mortgage.
The final provision of the agreement, that the same should be null and void if the agreement to purchase was not "consummated" within three years, was merely an attempt to

waive in advance the right of redemption, which may not be done (Civ. Code, sec. 2889).

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 5, 1939, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 6, 1939.