[No. E037560. Fourth Dist., Div. Two. Dec. 15, 2006.]

WACHOVIA BANK, as Asset Trustee, etc., Plaintiff and Respondent, v. LIFETIME INDUSTRIES, INC., Defendant and Appellant.

1040

COUNSEL

Dill and Showler and Scott Showler for Defendant and Appellant.

Baker & Hostetler, Gary York and Lisa I. Carteen for Plaintiff and Respondent.

OPINION

KING, J.—

## INTRODUCTION

When the holder of an option to purchase real property exercises the option and thereby obtains title to the property, the optionee's title relates back to the date the option was given. As a result, interests in the property that arose between the date of the option and the transfer of title to the optionee are extinguished if the owner of the intervening interest had notice of the option. In this case, we consider whether evidence that an optionee has obtained title to property that is the subject of the option is sufficient to extinguish an intervening lien when there is no evidence that the optionee's title was obtained pursuant to the option. We hold that it is not. In order for an optionee to have the benefit of the relation-back rule, the optionee must have been able to compel specific performance of the option. If an optionee did not have the right to specific performance of the option, but nevertheless obtains title to the property outside the purview of the option, the optionee has no greater priority among competing claims to the property than any other purchaser of the property.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

### A. *Background*

Prior to December 15, 1993, Kmart Corporation, a Michigan corporation (Kmart), owned certain real property located in Perris, California (the Property). On that date, a set of agreements were made pursuant to which: (1) Kmart sold an estate for years on the Property, expiring on January 31, 2024, to certain entities we will refer to collectively as Shawmut Bank; (2) Kmart deeded the remainder interest in the Property (the Remainder) to an entity we will refer to as FGHK; (3) FGHK sold to Shawmut Bank options to lease the land after the estate for years expired and to purchase the Remainder as provided in a certain "option and estate for years agreement"

(capitalization omitted) (the Option Agreement); and (4) Shawmut Bank (as owner of the estate for years) leased the Property to Kmart.

In addition, Shawmut Bank concurrently entered into at least two related agreements to secure certain indebtedness to The Bank of New York: (1) a deed of trust and security agreement (the Deed of Trust) by which Shawmut Bank mortgaged its interest in the Property; and (2) a trust indenture, assignment of lease and rents, and security agreement (Trust Indenture) by which Shawmut Bank assigned (among other interests) its interest in the Kmart lease and the Option Agreement. In August 1994, the Deed of Trust was modified to add the Option Agreement and Shawmut Bank's rights under that agreement to the collateral covered by the Deed of Trust.[1]

Shawmut Bank paid $12,843 for the options provided for in the Option Agreement. Under the purchase option, Shawmut Bank (as the optionee) has the right to exercise an option to purchase FGHK's Remainder upon the occurrence of any of several specified events, including: (1) the expiration of the estate for years; (2) the sale of the Remainder by FGHK; (3) the failure of FGHK to release, vacate, or fully bond any judgment issued or levied against the Property within 30 days of such issue or levy; (4) the insolvency of FGHK; (5) the commencement of bankruptcy proceedings against FGHK; (6) FGHK's breach of covenants contained in the Option Agreement; and (7) the termination of the estate for years. The agreement also provides that FGHK must keep the Property "free and clear of Optionor Liens." The phrase "Optionor Liens" is defined to include any lien resulting from an act of or claim against the optionor (i.e., FGHK) arising out of events or conditions not related to the transactions contemplated by the Option Agreement. The Option Agreement also contained certain affirmative covenants by the optionee, including not permitting any mechanic's liens against the Property when the lease to Kmart is not in effect.

---

[1] The parties do not dispute that Shawmut Bank's interest in the Option Agreement could be the subject of a deed of trust or mortgage. Civil Code section 2947 provides that "[a]ny *interest in real property* which is capable of being transferred may be mortgaged." (Italics added.) Although California cases have repeatedly stated that an option to purchase real property does not constitute an interest in real property (see, e.g., *Palo Alto Town & Country Village, Inc. v. BBTC Company* (1974) 11 Cal.3d 494, 503 [113 Cal.Rptr. 705, 521 P.2d 1097]; *Warner Bros. Pictures v. Brodel* (1948) 31 Cal.2d 766, 772 [192 P.2d 949]), there is some authority that an option is nevertheless a mortgageable interest (see *Chapman v. Great Western Gypsum Co.* (1932) 216 Cal. 420, 425 [14 P.2d 758] [option contained in lease is a covenant running with the land that can be the subject of a mortgage]; 1 Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 3d ed. 2006) § 1.29, p. 24 [rights under an option to purchase real property may be mortgaged]; cf. *Tripler v. MacDonald Lumber Co.* (1916) 173 Cal. 144, 147 [159 P. 591] [buyer under contract for purchase of sale can mortgage right to complete purchase of the property]; see also *Chinn v. Sheridan Hardwood, Inc.* (1961) 229 Ore. 123, 127 [366 P.2d 321, 323] [option to purchase is "valuable interest and can constitute the subject matter of a mortgage"]). Because the issue has not been raised or briefed by any party, we do not resolve this question.

The option may be exercised by the optionee by notifying the optionor of the optionee's "desire to exercise" the option. At the closing of the purchase of the Remainder pursuant to the purchase option, "title to the Remainder shall be conveyed by special warranty deed free and clear of all Liens, except Permitted Liens."[2] The Option Agreement was recorded on January 3, 1994.

In January 2002, defendant Lifetime Industries, Inc. (Lifetime), recorded a mechanic's lien against the Property.

In April 2003, The Bank of New York assigned the beneficial interest under the Deed of Trust to plaintiff in this case, Wachovia Bank, as the Asset Trustee for Property Acquisition Trust 1993-22 (PAT).

On May 21, 2003, a foreclosure sale took place pursuant to the power of sale provision in the Deed of Trust, as modified in August 1994. At the sale, PAT purchased the estate for years and the rights of the optionee under the Option Agreement. FGHK continued to own the Remainder.

On January 26, 2004, Lifetime obtained a judgment from the Riverside County Superior Court against FGHK (the Lifetime Judgment). The Lifetime Judgment provides for an award of $837,795.88 against FGHK, "a lien upon the ownership interest of [FGHK] in the [Property]" for such amount, and an order that the interest of FGHK in the Property be sold at public auction to pay the sums owed.

On February 23, 2004, PAT served on FGHK written notice of its intent to exercise the option to purchase the Remainder pursuant to the Option Agreement (the Exercise Notice). The Exercise Notice recites that PAT has the right under the Option Agreement to exercise the purchase option if FGHK fails to release, vacate, or fully bond the Lifetime Judgment. The Exercise Notice further states that FGHK breached its covenant under the Option Agreement to keep the Property free and clear of Optionor Liens. According to the Exercise Notice, the purchase price for the Remainder under the Option Agreement is $24,790.

In a written response to the Exercise Notice, FGHK (through its counsel) stated: "PAT's contention that it will acquire the right to exercise the option to purchase the remainder interest if the Lifetime [J]udgment is not satisfied, stayed or vacated within thirty (30) days of its entry is hereby rejected by FGHK." FGHK asserted that the Kmart lease had terminated and that PAT, as

---

[2] "Lien" is defined in the Option Agreement as "any mortgage, pledge, lien, charge, security interest, disposition of title or lease (including any conditional sale agreement, equipment trust agreement or other title retention agreement) or other encumbrance of whatsoever nature." The phrase "Permitted Liens," though capitalized, is not defined in the Option Agreement.

the optionee and owner of the estate for years, had the duty to protect the Property against the mechanic's lien.

According to PAT, FGHK's response constituted a repudiation of the Option Agreement.

B. *The Pleadings and PAT's Motion for Summary Adjudication*

In March 2004, PAT filed a complaint in state court against Lifetime, FGHK, and fictitiously named defendants.[3] The complaint alleged the following five counts: (1) declaratory relief against Lifetime; (2) declaratory relief against FGHK; (3) quiet title against all defendants; (4) breach of contract against FGHK; and (5) specific performance against FGHK. In its claims against FGHK, PAT sought, among other remedies, an order directing FGHK to deliver to PAT a special warranty deed of the Remainder immediately upon PAT's tender of the purchase price. PAT alleged that "[u]pon Defendant FGHK's conveyance of the Remainder to PAT pursuant to a deed (the 'FGHK Deed'), the title that PAT obtains in the Remainder will relate back to January 3, 1994, the date the Option was granted, and will be free and clear of any subsequent liens."

Lifetime and FGHK answered the complaint, and FGHK filed a cross-complaint against PAT for breach of contract, declaratory relief, and injunctive relief. FGHK alleged that PAT breached the Option Agreement and that FGHK is not obligated to convey title to the Remainder to PAT.

In PAT's declaratory relief claim against Lifetime, PAT sought a judicial declaration that: "(1) PAT's interest in the Remainder, as represented by the Option Agreement (and all rights of PAT thereunder), the Exercise Notice, and (when executed as required by the Option Agreement) the FGHK Deed, is prior to and superior to Defendant Lifetime's purported interest in the Remainder, as represented by the Lifetime Judgment, (2) PAT's title to the Remainder relates back to January 3, 1994, the date the Option was granted, (3) PAT's exercise of the Option extinguished Defendant Lifetime's interest in the Remainder, as represented by the Lifetime Judgment, and (4) any person or entity that acquires an interest in the Remainder at an execution sale or foreclosure sale conducted pursuant to the Lifetime Judgment, will take title to the Remainder subject to PAT's interest in the Remainder, as represented by the Option Agreement, the Exercise Notice, and (when executed as required by the Option Agreement) the FGHK Deed."

In its count for quiet title, PAT sought a judgment against Lifetime that: "PAT's interest in the Remainder, as represented by the Option Agreement,

---

[3] The complaint was filed on behalf of Wachovia Bank, as "Asset Trustee for" PAT.

the Exercise Notice, and (when executed as required by the Option Agreement) the FGHK Deed, is prior to and superior to Defendant Lifetime's interest in ′ the Remainder, as set forth in the Lifetime Judgment, and Defendant Lifetime has no interest in the Remainder adverse to PAT's interest in the Remainder . . . ."

PAT's claims against FGHK and FGHK's cross-complaint were ultimately dismissed. However, there is nothing in the record on appeal that indicates that the respective claims between PAT and FGHK were ever adjudicated.

In July 2004, PAT filed a notice of motion for summary adjudication of its claims against Lifetime on the ground that "PAT's Option to acquire the Remainder is superior to Lifetime's Lien." PAT argued that its right to acquire the Remainder relates back to the date of the Option Agreement and, therefore, it has the right to acquire the Remainder free and clear of Lifetime's lien. In its separate statement of undisputed material facts filed in support of the motion, PAT asserted:

(1) PAT is the optionee and owner of the option under the Option Agreement;

(2) FGHK is the optionor under the Option Agreement and owner of the Remainder;

(3) Lifetime is a general building contractor that recorded a mechanic's lien against the Property on January 31, 2002;

(4) Lifetime obtained the Lifetime Judgment on January 26, 2004, with respect to FGHK's interest in the Remainder; and

(5) On February 26, 2004, PAT exercised its option to purchase the Remainder based on FGHK's failure to cause the Lifetime Judgment to be released, vacated, or fully bonded within 30 days after its issue or levy.

Lifetime responded to PAT's separate statement by indicating that it did not dispute facts (2), (3), and (4). It disputed the first fact—that PAT is the optionee and owner of the option under the Option Agreement—by stating that the optionee under the Option Agreement is Shawmut Bank, and that none of the documents cited by PAT support an assignment of the option to PAT. Lifetime disputed the fifth fact, concerning PAT's exercise of the option, because it "includes legal conclusions"; however, it further stated that it did not dispute that "PAT gave notice of exercise of the Option by letter dated February 23, 2004 for the reason stated" by PAT. Lifetime asserted one additional fact: FGHK's receipt of the Remainder, FGHK's grant of the

option to Shawmut Bank, and Shawmut Bank's pledge of the option as security to The Bank of New York was all part of a financing transaction occurring in December 1993.

Lifetime opposed the motion for summary adjudication on the ground that, under Civil Code section 2906, PAT's rights do not relate back to the date of the Option Agreement.

Following a hearing, the court granted PAT's motion and subsequently entered judgment against Lifetime. The judgment provides: (1) PAT is the optionee and owner of an option to acquire the Remainder pursuant to the Option Agreement; (2) "PAT's exercise of the Option on February 26, 2004, extinguished Lifetime's interest in the Remainder, as represented by [the Lifetime Judgment]"; (3) "PAT's interest in the Remainder relates back to January 3, 1994"; and (4) "Any person or entity that acquires an interest in the Remainder at an execution sale or foreclosure sale conducted pursuant to the Lifetime Judgment, will take title to the Remainder subject to PAT's interest in the Remainder."

Lifetime appealed. On appeal, Lifetime repeats its argument that Civil Code section 2906 operates to make the option to purchase the Remainder effective only upon its exercise on February 23, 2004. Lifetime further contends that, even if summary judgment is proper, the trial court's judgment must be modified because it "declares the invalidity of the [mechanic's] lien on the remainder, rather than merely declaring that it is subordinate to the option to purchase."

After the parties filed their briefs, we issued an order pursuant to Government Code section 68081 requesting supplemental briefing on the following issue: "whether plaintiff is entitled to a judicial declaration or a quiet title judgment stating that its exercise of an option to purchase the remainder interest in the subject [P]roperty extinguished defendant's lien against the [R]emainder when there is no evidence that plaintiff has obtained title to the [R]emainder pursuant to such exercise of the option." In response, PAT filed a motion pursuant to Code of Civil Procedure section 909 to have this court take evidence of a quitclaim deed from FGHK to PAT. A certified copy of the quitclaim deed was submitted along with the motion. The quitclaim deed is dated December 2, 2004—two months after the hearing on the summary judgment motion. According to PAT, it "could not consummate the transaction until the controversy regarding PAT's and Lifetime's competing claims in the [R]emainder was resolved" by the summary judgment motion.

PAT's motion is supported by the declaration of an employee of a legal services firm, who states that he obtained the certified copy of the quitclaim

deed from the Riverside County Recorder. PAT submitted no evidence showing that its receipt of the quitclaim deed was pursuant to its exercise of the option. PAT asserts that, in light of this new evidence, we need not reach the issue we posed in our request for supplemental briefing. Instead, PAT requests that we issue a modified judgment stating that PAT's acquisition of the Remainder, as evidenced by the quitclaim deed, extinguished the Lifetime Lien.

For the reasons that are explained below, we hold that even if we took judicial notice of the quitclaim deed as additional evidence to support the judgment, PAT is not entitled to summary judgment because such evidence fails to establish that the title obtained by the quitclaim deed was obtained pursuant to its exercise of the option.

## ANALYSIS

### A. *Summary Judgment and PAT's Motion to Make Additional Fact Findings and Take Additional Evidence*

Under Code of Civil Procedure section 909, when there is no right to a jury trial, a reviewing court may make factual determinations contrary to or in addition to those made by the trial court; the court may also take additional evidence of facts occurring any time prior to the decision on appeal.[4] "The power created by the statute is discretionary and should be invoked sparingly, and only to affirm the case." (*Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 42 [31 Cal.Rptr.2d 378].) It follows that if the judgment can be affirmed without consideration of PAT's motion to take additional evidence, we need not consider it. We will thus first review the court's ruling without regard to PAT's motion; if the judgment cannot be affirmed based upon the evidence before the trial court, we will consider whether the proffered quitclaim deed requires a different result.

We review a ruling granting a motion for summary judgment de novo. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925 [68 Cal.Rptr.2d 571].) The

---

[4] Code of Civil Procedure section 909 provides: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."

standard is the same for our review of a trial court's order granting summary adjudication. (*Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972 [103 Cal.Rptr.2d 672, 16 P.3d 94]; *Bank of America v. La Jolla Group II* (2005) 129 Cal.App.4th 706, 710 [28 Cal.Rptr.3d 825].) We apply the same three-step analysis required of the trial court in ruling on a motion for summary judgment. (*Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 392 [134 Cal.Rptr.2d 689].) "First, we identify the issues framed by the pleadings . . . ." (*Riverside County Community Facilities Dist. v. Bainbridge 17* (1999) 77 Cal.App.4th 644, 653 [92 Cal.Rptr.2d 29].) "Second, we determine whether the moving party has met its statutory burden of proof." (*Ibid.*) When, as here, a plaintiff is the moving party, we determine whether the plaintiff has met its burden by producing admissible evidence proving each element of the cause of action entitling the party to judgment on that cause of action. (*Ibid.*; Code Civ. Proc., § 437c, subd. (p)(1).) Finally, if the moving party has met its statutory burden of proof and prima facie justifies a judgment, the burden shifts to the opposing party and we determine whether that party has met its burden under Code of Civil Procedure section 437c. (*Riverside County Community Facilities Dist. v. Bainbridge 17, supra*, at p. 653.) When, as here, the opposing party is a defendant, we determine whether the defendant has met its burden under subdivision (p)(1) of Code of Civil Procedure section 437c of producing admissible evidence showing that " 'a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " (See *Riverside County Community Facilities Dist. v. Bainbridge 17, supra*, at p. 653.)

We begin by setting forth the general principles applicable to the issues raised by the pleadings. An option to purchase real property, supported by consideration, is a contract by which the owner of the property (the optionor) gives another (the optionee) the exclusive right to purchase the property in accordance with the terms of the option. (*County of San Diego v. Miller* (1975) 13 Cal.3d 684, 688 [119 Cal.Rptr. 491, 532 P.2d 139]; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 168, p. 204.) An option may provide that it can be exercised only upon the existence of specified facts or the occurrence of specified events. (3 Corbin on Contracts (rev. ed. 1996) § 11.8, pp. 533–534.) If the specified facts do not exist or the specified events do not occur, then the option cannot be exercised. (*Fabares v. Benjamin* (1960) 180 Cal.App.2d 264, 269–270 [4 Cal.Rptr. 359].)

An option is not a sale of the property, but a sale of a right to purchase the property. (*Warner Bros. Pictures v. Brodel, supra*, 31 Cal.2d at p. 772; *Seeburg v. El Royale Corp.* (1942) 54 Cal.App.2d 1, 4 [128 P.2d 362].) Upon exercise of the option, the option ceases to exist and is transformed into a contract of purchase and sale; the optionor becomes a seller and the optionee a buyer. (*Claremont Terrace Homeowners' Assn. v.*

*United States* (1983) 146 Cal.App.3d 398, 406 [194 Cal.Rptr. 216] (*Claremont Terrace*); *Schomaker v. Osborne* (1967) 250 Cal.App.2d 887, 893 [58 Cal.Rptr. 827]; 1 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 2:9, p. 31 (Miller & Starr).) If, after valid exercise of the option, the optionor refuses to perform (i.e., fails to deliver title to the optionee), the optionee-buyer may sue to compel specific performance. (*Auslen v. Johnson* (1953) 118 Cal.App.2d 319, 321 [257 P.2d 664].) However, if an optionee is in default under the option agreement, the optionee is not entitled to specific performance and obtains no interest in the property. (*Maxfield v. Burtt* (1953) 121 Cal.App.2d 102, 115–116 [262 P.2d 580].)

■ Although an option gives the optionee *contractual* rights to purchase the property, it "is merely an offer to sell and vests no estate in the property to be sold." (*Leslie v. Federal Finance Co., Inc.* (1939) 14 Cal.2d 73, 80 [92 P.2d 906]; see also *Warner Bros. Pictures v. Brodel, supra,* 31 Cal.2d at p. 772 ["[a]n option contract relating to the sale of land . . . conveys *no* interest in [the] land," italics added]; *San Jose Parking, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1321, 1326 [2 Cal.Rptr.3d 505] [same]; 1 Miller & Starr, *supra,* § 2:7, pp. 19, 24 [an option "is not a transfer of the title or any estate in the property"].) However, when the option is exercised, the right to purchase the property relates back to the time the option was made. (*Claremont Terrace, supra,* 146 Cal.App.3d at pp. 406–407; *Anthony v. Enzler* (1976) 61 Cal.App.3d 872, 876 [132 Cal.Rptr. 553]; *Seeburg v. El Royale Corp., supra,* 54 Cal.App.2d at p. 4.) Thus, subsequent purchasers of the property with notice of an option to purchase take subject to the right of the optionee to complete the purchase. (*Claremont Terrace, supra,* at p. 406.) The effect of these rules with respect to competing claims to title to property is summarized by Miller & Starr: "When a purchaser or encumbrancer acquires an interest in the property after the option is given but before it is exercised, and he or she has notice of the option, when the option is exercised *the title received by the optionee* relates back to the date the option was given and extinguishes the interest of the intervening party." (5 Miller & Starr, *supra,* § 11:108, pp. 283, 285, italics added.) Implicit in this relation-back rule is the fact that the optionee has actually received title to the property pursuant to the exercise of the option. Until title is transferred, the optionee, after exercising the option, holds only a right to complete the purchase, enforceable by specific performance; intervening interests, while subject to this right, are not yet extinguished.

■ Under California's mechanic's lien law, a mechanic's lien attaches to any interest in a work of improvement and the real property on which it is situated. (Civ. Code, § 3128.) The lien is a direct lien, similar to a mortgage, and is imposed as security for payment of sums due the mechanic. (*Id.,* § 3123; *Laubisch v. Roberdo* (1954) 43 Cal.2d 702, 709 [277 P.2d 9]; 10 Miller & Starr, *supra,* § 28:4, p. 18.) To preserve a mechanic's lien, the lien

claimant must record a claim of lien within certain time periods following the completion or cessation of work. (Civ. Code, §§ 3115–3116.) The recordation of the claim of lien provides constructive notice of the lien to subsequent purchasers and encumbrancers. (10 Miller & Starr, *supra*, § 28:48, pp. 159–160.) However, although the claim of lien may be recorded after the work is completed, the lien relates back to the date the first labor or material was furnished for the work of improvement, and transferees who take an interest in the property after work has begun, and before the claim of lien is recorded, take subject to the lien. (*Schrader Iron Works, Inc. v. Lee* (1972) 26 Cal.App.3d 621, 631–632 [103 Cal.Rptr. 106]; *Simons Brick Co. v. Hetzel* (1925) 72 Cal.App. 1, 5 [236 P. 357]; *Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1247 [8 Cal.Rptr.2d 298]; see Cal. Mechanic's Liens and Related Construction Remedies (Cont.Ed.Bar 3d ed. 2005) § 2.64, pp. 78–79.)

In light of the foregoing principles, the factual issues framed by the pleadings (as reflected in the four-part judicial declaration and the nature of the quiet title judgment sought by PAT) are: (1) whether PAT is the holder of the option to purchase the Remainder under the Option Agreement; (2) whether the Option Agreement was made and recorded prior to the date Lifetime's mechanic's lien attached to the Remainder; (3) whether PAT exercised the option to purchase the Remainder in accordance with the terms of the Option Agreement; and (4) whether PAT has received title to the Remainder pursuant to the exercise of the option to purchase.

Under the next step in our analysis, we must determine whether the admissible evidence supplied by PAT is sufficient to satisfy its burden of proving it is entitled to the judicial declaration and the quiet title judgment it seeks. In support of its proffered fact that it is the owner of the purchase option under the Option Agreement, PAT supplied the Option Agreement (showing Shawmut Bank as the owner of the option to purchase), and the Trustee's deed upon sale by which ownership of the option rights were transferred to PAT. Lifetime did not object to the admissibility of either of these documents. They set forth sufficient evidence to prove that PAT holds the option to purchase.

With respect to whether the option was given and recorded prior to the date Lifetime first provided the labor or material for the work of improvement to which its mechanic's lien relates, PAT submits that: (1) the Option Agreement is dated December 15, 1993, and was recorded January 3, 1994; and (2) Lifetime obtained the Lifetime Judgment on January 26, 2004. A copy of the Option Agreement, with recording stamp, provides evidence of the dates the agreement was made and recorded. Evidence of the date of the Lifetime Judgment is arguably irrelevant to determining the date of Lifetime's lien.

Even the date that the mechanic's lien claim was recorded—January 31, 2002—is not determinative of the priority of Lifetime's mechanic's lien. As discussed above, a mechanic's lien relates back to the date of the commencement of the work of improvement. Evidence of the date the Lifetime Judgment was entered or the mechanic's lien claim recorded does not establish this fact. Despite this deficiency, Lifetime did not argue below, and does not contend on appeal, that the mechanic's lien arose prior to the date the Option Agreement was recorded or that summary adjudication is improper on this basis. We thus consider any deficiency in PAT's moving papers on this point to have been waived by Lifetime. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 [43 Cal.Rptr.3d 148]; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 [31 Cal.Rptr.2d 264].)

With respect to the third factual issue, PAT states that it exercised the option to purchase on February 26, 2004. PAT's evidence on this point is: (1) the Option Agreement; (2) Lifetime's response to a request for admission in which Lifetime admitted that PAT sent the February 23, 2004, Exercise Notice to FGHK and that the letter "says what the letter says"; (3) Lifetime's responses to requests for admission in which Lifetime admitted that, as of June 14, 2004, FGHK has not paid the judgment nor made any provision for discharge of the Lifetime Judgment; and (4) the Exercise Notice. The Option Agreement provides: "If the Optionee wishes to exercise the Purchase Option, the Optionee may notify the Optionor of its desire to exercise the Purchase Option, such notice to be given [in accordance with certain time periods varying with the basis for the exercise of the option]." The Exercise Notice states that it is "notice . . . to optionor of PAT's intent to exercise its right to purchase the Remainder . . . unless on or before February 26, 2004, optionor releases, vacates or fully bonds the Lifetime lien." (Capitalization omitted.) Lifetime's admission that FGHK has not paid or provided for discharge of the lien, together with the deadline provided in the Exercise Notice, is evidence that PAT exercised the purchase option in accordance with the terms of the Option Agreement.

We now turn to the fourth issue framed by the pleadings—whether PAT has received title to the Remainder pursuant to its exercise of the option. In its separate statement of undisputed material facts, PAT does not state that FGHK ever delivered a deed to the Remainder to PAT or that PAT otherwise obtained title to the Remainder. Indeed, PAT expressly states that *FGHK owns the Remainder.* At most, the evidence submitted to the trial court shows that PAT gave notice that constitutes an exercise of the option to purchase. At that point, the Option Agreement was transformed into a purchase and sale agreement and PAT, as the optionee-buyer, had the rights and obligations associated with such status. One such right is the right to have the title that is ultimately obtained from the optionor relate back to the date of the option. (*Claremont Terrace, supra*, 146 Cal.App.3d at p. 406.) If the purchase is

completed and title to the Remainder passes to PAT pursuant to the option, Lifetime's mechanic's lien will be extinguished. (*Id.* at p. 407.) However, the mere exercise of the option, without the consummation of the purchase and sale transaction, does not provide PAT with title to the Remainder. Based upon the record before the trial court, title to the Remainder continued to be held, as PAT admits in its separate statement, by FGHK. Therefore, Lifetime's lien against FGHK's interest in the Remainder has not been extinguished.

To hold otherwise would produce a potentially absurd result. If, for example, the mere exercise of an option were sufficient to extinguish a subordinate lien and PAT exercised its option (thereby extinguishing Lifetime's lien), but subsequently failed to tender the purchase price for the Remainder, or was unable to obtain title to the Remainder because of a failure of a condition to closing or a contractual breach by PAT, then FGHK would retain title to the Remainder free and clear of Lifetime's lien. Such a result would be patently unjust to Lifetime and present opportunities for collusion between the optionor and optionee that should not, as a matter of policy, be encouraged. Clearly, PAT must obtain title to the Remainder pursuant to the exercise of the option in order to extinguish Lifetime's lien.

Because the mere exercise of the option does not extinguish a subordinate lien on the Remainder, PAT has not shown that it is entitled to the judicial declaration it sought in its complaint based on the record before the trial court. Specifically, PAT is not entitled to a declaration that its "title to the Remainder relates back to January 3, 1994," or that the exercise of the option to purchase "extinguished Defendant Lifetime's interest in the Remainder." Code of Civil Procedure section 437c, as relevant here, is restricted to disposing of the action as a whole or, at a minimum, a cause of action. As stated in *Hood v. Superior Court* (1995) 33 Cal.App.4th 319, 323 [39 Cal.Rptr.2d 296], "[t]he Legislature declared the purpose of the amendment to [Code of Civil Procedure section 437c,] subdivision (f): 'to stop the practice of adjudication of facts or adjudication of issues that do not completely dispose of a cause of action or defense.' " " 'A motion for summary adjudication shall be granted only if it completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty.' " (*Ibid.*) Here, PAT sought a judicial declaration comprised of four parts stated in the conjunctive. Because PAT has not shown it is entitled to its desired declaration, it is not entitled to summary adjudication of the cause of action for declaratory relief. Nor is it entitled to summary adjudication of its quiet title cause of action in the absence of evidence that it has obtained title to the Remainder pursuant to its exercise of the option.

Because we cannot affirm the judgment in the absence of evidence that PAT has obtained title to the Remainder, we now consider whether to grant

PAT's motion to make additional factual findings and take evidence of the quitclaim deed. In the motion, PAT requests that, in addition to taking judicial notice of the quitclaim deed it received from FGHK, we make the following factual findings: (1) "PAT acquired title to the [R]emainder pursuant to PAT's exercise of the option and FGHK's conveyance of title to the [R]emainder to PAT via [the quitclaim deed]"; and (2) "PAT's acquisition of title to the [R]emainder, as evidenced by the Quitclaim Deed, extinguished Lifetime's Lien."

We will assume for purposes of our analysis that the threshold requirement under Code of Civil Procedure section 909 that the parties are not entitled to a jury trial is met. We proceed directly to the question of whether the evidence of the quitclaim deed (if we were to take such evidence) is sufficient to establish that "PAT acquired title to the Remainder pursuant to PAT's exercise of the option." For the reasons that follow, we hold that the quitclaim deed, without more, is insufficient to support the requested finding or the judgment.

We begin by noting that while the relation-back rule is well settled, the nature of this rule has not been clearly explained by the California cases that have relied on it. Initially, we observe that the title that relates back to the date of the option must bear some relationship to the option. Suppose, for example, that a condition to exercising an option to purchase property does not occur, or the optionee has breached the terms of the option agreement such that he cannot enforce the option, but the optionee nevertheless purchases title to the subject property in a new transaction wholly unconnected with the option. Under these circumstances, it appears to us that the purchaser should not have the benefit of the relation-back rule and his title should have no effect upon interests in the property that arose after the option and before the optionee's purchase. Such a purchaser should be in no better position than any purchaser of the property as of the time of the purchase. Certainly, something more than the mere fact that the optionee subsequently acquired title is required before the purchaser has the benefit of the relation-back rule.

To clarify the relationship between the option and the subsequent title, we look to the rationale for the relation-back rule. The rule was first expressed by a California court in *Smith v. Bangham* (1909) 156 Cal. 359 [104 P. 689]. There the court stated that an "option vests in the grantee the right or privilege of acquiring an interest in the land, and, when accepted, entitles him to call for specific performance. [Citations.] Such right, when exercised, must necessarily relate back to the time of giving the option [citation], so as to cut off intervening rights acquired with knowledge of the existence of the option. A subsequent purchaser with notice of a valid and irrevocable option would certainly take subject to the right of the option holder to complete his

purchase . . . ." (*Id.* at p. 365.) The rule thus appears to follow from, and be coextensive with, the right of an optionee to obtain specific performance of the optionor's promise to deliver title to the property. Unless the parties agree otherwise, the title the optionee is entitled to receive is title as it existed at the time it was promised; that is, as of the date of the option. For example, a property owner who grants an option to purchase property unencumbered by liens, must, upon exercise of the option and the fulfillment of any conditions, deliver title to the optionee in the unencumbered condition, not otherwise. Because specific performance of the option would compel the delivery of title in the condition promised at the time of the option, enforcement of the option "necessarily" extinguishes intervening interests. (*Ibid.*; see *Seeburg v. El Royale Corp., supra*, 54 Cal.App.2d at p. 4.) If the rule were otherwise, an owner of property could grant an option to purchase unencumbered property upon payment of a certain price, thereafter borrow money secured by a mortgage on the property, and then, upon exercise of the option, deliver to the optionee title to the property subject to the mortgage. Such a result is patently inconsistent with the optionee's right to specific performance of the option.

This justification for the relation-back rule does not apply when the optionee obtains title to the property despite the failure of a condition, expiration of the option, or a material breach by the optionee that would preclude specific performance. Allowing the optionee's title to relate back to the date of the option agreement under such circumstances would not serve the purpose of enforcing the agreement reflected in the option. Moreover, application of the relation-back rule under such circumstances could be unfair to the holders of intervening interests who took with knowledge of the option. Suppose, for example, that a prospective lender concludes, based upon an examination of the option and consideration of relevant circumstances, that the optionee is in default under the option, the time for exercising the option has expired, or that conditions precedent to the purchase cannot occur. On that basis, he agrees to loan money to the property owner and receives a deed of trust on the property. Indeed, the optionee cannot obtain specific performance of the option (because of his default, the expiration of the option, or the failure of conditions precedent to purchase), but the optionee nevertheless obtains title to the property from the optionor pursuant to a new transaction. Although the intervening purchaser had notice of the option and undertook any risk that his interest would be extinguished by a valid exercise of the option and related purchase, it cannot be said that he undertook the risk that his interest would be extinguished by the optionee's acquisition of a deed to the property outside the purview of the option. In the event of such a transaction, the optionee should be in the same position as any other purchaser of the property, and the ordinary rules of priority should apply.

In light of the purpose of the relation-back rule, the rule should apply when the optionee could, if necessary, compel specific performance of the

option, and should not apply when the optionee would not be able to compel specific performance of the option. We therefore hold that if an optionee takes title to property outside the purview of the option—that is, when the optionee would not have been able to compel specific performance of the option—the relation-back rule does not apply and the title obtained by the optionee does not extinguish intervening interests.

Here, the evidence of the quitclaim deed, if we decided to take such evidence, does not necessarily establish that PAT acquired its title under circumstances where the relation-back rule would apply. Indeed, there are facts that suggest otherwise. FGHK initially denied PAT's right to acquire the Remainder, asserting that PAT had breached the Option Agreement and was not entitled to specific performance. Although the respective claims were ultimately dismissed, the issues were never determined. FGHK eventually delivered a quitclaim deed to PAT, rather than the special warranty deed called for in the option. In its response to our request for supplemental briefing, PAT states that it could not obtain a deed from FGHK "until the controversy regarding PAT's and Lifetime's competing claims in the remainder was resolved." Although this statement is not explained, it suggests that PAT could not have obtained the deed from FGHK by operation of the terms of the option, but was required to fulfill an additional condition—the resolution of the PAT-Lifetime dispute—as part of a new agreement between the parties.

Full development of the facts and circumstances concerning the enforceability of the option and the delivery of the quitclaim deed may well show that PAT is entitled to the benefit of the relation-back rule. On this record, however, there is insufficient evidence, even if we were to grant PAT's motion, to establish that PAT obtained title pursuant to the option or that such title extinguished Lifetime's lien. Because we would not affirm the judgment if we were to grant PAT's motion to take evidence on appeal of the quitclaim deed, we will deny the motion.

B. *Applicability of Civil Code Section 2906*

Although we reverse the judgment for the reasons set forth above, we address an additional argument by Lifetime for the guidance of the trial court on remand because it will likely be raised again. (See *Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694, 719 [66 Cal.Rptr.2d 630, 941 P.2d 809]; *Hale v. Morgan* (1978) 22 Cal.3d 388, 405 [149 Cal.Rptr. 375, 584 P.2d 512].) Lifetime asserts as an additional material fact the following: "FGHK, Ltd. received the grant of the remainder interest, granted the Option to the Owner Trustee (Shawmut Bank) and it was pledged as security to The Bank of New

York, all as part of a financing transaction occurring during December 1993." As evidence for this fact, Lifetime refers to the Option Agreement, the Deed of Trust, and other documents related to the December 1993 and August 1994 transactions concerning the Property. Lifetime argues that this fact precludes summary adjudication in PAT's favor because, under Civil Code section 2906, the exercise of an option that is used as part of a financing transaction does not relate back to the date of the option. As we explain, we reject this argument.

Civil Code section 2906 provides: "An option granted to a secured party by a debtor to acquire an interest in real property collateral takes priority as of its recording and is effective according to its terms if the right to exercise the option is not dependent upon the occurrence of a default with respect to the security agreement and, where the real property which is the subject of the option is other than residential real property containing four or fewer units, shall not be deemed invalid or ineffective on the basis that the secured party has impaired the debtor's equity of redemption in violation of common law or [Civil Code] Section 2889. This section shall not be construed to make valid or effective an otherwise unlawful option nor shall any inference be drawn from this section as to the validity or application of common law with respect to residential real property containing four or fewer units."

This section was enacted in response to a concern that purchase options granted to lenders in connection with loans secured by real property could be invalidated under a common law rule against "clogging" or impairing a borrower's equity of redemption. (Assem. Com. on Judiciary, Staff Comments on Assem. Bill. No. 2383 (1983–1984 Reg. Sess.) as amended Mar. 12, 1984, p. 2; Sen. Insurance, Claims, & Corporations Com., Analysis of Assem. Bill No. 2383 (1983–1984 Reg. Sess.) as amended Mar. 28, 1984.) Under common law mortgage principles, if a borrower gave a lender a mortgage on certain real property to secure a loan and the borrower then defaulted on the loan, the borrower still had the right to pay the sums due and retain title to the property, a right referred to as the "equity of redemption"; this right existed until the lender foreclosed that right by judicial action. (1 Cal. Mortgage and Deed of Trust Practice, *supra*, § 1.29, p. 24; see Civ. Code, § 2903.) To avoid a borrower's equity of redemption, a lender might attempt, by the use of "devious language, labels, and structures," to obtain a right to acquire the borrower's property without providing the borrower with an opportunity to cure a default or redeem the property. (1 Cal. Mortgage and Deed of Trust Practice, *supra*, § 5.50, p. 350.) Such instruments, by restraining or clogging the borrower's right of redemption, will be either treated as an equitable mortgage (with the attendant equity of redemption) or declared invalid. (See *id.*, § 5.50, pp. 350–351; Civ. Code, § 2889 [contracts in restraint of the right of redemption from a lien are void]; *Hamud v. Hawthorne* (1959) 52 Cal.2d 78, 84 [338 P.2d 387] [agreement purporting to waive or

restrain redemption rights is invalid]; *Russell v. Zink* (1939) 32 Cal.App.2d 566, 573–574 [90 P.2d 360] [deed and repurchase agreement that impaired grantors' right of redemption was an equitable mortgage].) Arguably, an option to purchase given to a lender as security for a debt, where the option could be exercised upon the debtor's default, could be declared invalid under this rule. (See 4 Miller & Starr, *supra*, § 10:195, pp. 613–615; 1 Cal. Real Property Sales Transactions (Cont.Ed.Bar 3d ed. 2005) § 7:42, p. 656; *Humble Oil & Refining Co. v. Doerr* (1973) 123 N.J. Super. 530, 544–545 [303 A.2d 898, 905–906].)

■ Civil Code section 2906 ensures that an option given by a borrower to a lender to purchase nonresidential property will not be invalidated on the basis that it restrains the borrower's right of redemption, so long as the right to exercise the option is not dependent upon the borrower's default. The statute also declares that the option shall take "priority as of its recording." (Civ. Code, § 2906.) Lifetime reads into the statute a negative implication: that an option given by a borrower to a secured lender in which the right to exercise the option *is* dependent upon the borrower's default *is* invalid (or at least its priority does not relate back to its recording date). Lifetime argues that the Option Agreement is such an option and, therefore, the priority of the right to purchase does not relate back to the date of the option.

Initially, it does not appear to us that Lifetime is correct in drawing the negative inference from the statute. The statute essentially provides a safe harbor for lenders in a commercial real property financing transaction to take an option to purchase the property in addition to taking a security interest in the property. So long as the option concerns property other than residential property containing four or fewer units and its exercise is not dependant upon a default by the borrower, the parties can be assured that the option will not subsequently be declared void as a restraint on the borrower's right to redeem the property, and that its priority will relate back to the date of the option. It does not necessarily follow that an option that lies outside this safe harbor will necessarily be declared void (or that it would lose its priority). Whether an instrument is a disguised mortgage depends upon the nature of the transaction and the intent of the parties. (See, e.g., *Coast Bank v. Minderhout* (1964) 61 Cal.2d 311, 313–315 [38 Cal.Rptr. 505, 392 P.2d 265], disapproved on another point in *Wellenkamp v. Bank of America* (1978) 21 Cal.3d 943, 953 [148 Cal.Rptr. 379, 582 P.2d 970]; *Kaiser Industries Corp. v. Taylor* (1971) 17 Cal.App.3d 346, 351–352 [94 Cal.Rptr. 773].) Even if an option is given as part of a real property financing transaction and can be exercised upon the borrower's default, the facts and circumstances surrounding the transaction and the intent of the parties may nevertheless reveal that the option is not a disguised mortgage and should be enforceable according to its terms. (Cf. *Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 16–20 [92 Cal.Rptr. 704, 480 P.2d 320] [assignment of rents and agreement not to sell or encumber

made as part of real property financing was not an equitable mortgage].) Moreover, if the instrument is determined to be a mortgage, the courts may simply treat it as such, protecting the borrower's equity of redemption by requiring compliance with foreclosure procedures without voiding the instrument. (See, e.g., *Kaiser Industries Corp. v. Taylor, supra*, at p. 352 [when equitable mortgage is created, judicial foreclosure procedures must be followed].) Thus, if an option is deemed to be a mortgage, the court could require the optionee to use judicial foreclosure proceedings to obtain the property, thereby allowing the debtor-optionor an opportunity to cure the default and redeem the property. (Cf. *Wilson v. Anderson* (1930) 109 Cal.App. 467, 474–476 [293 P. 627] [where deed was, in legal effect, a mortgage, the mortgagee was required to judicially foreclose].) Such a result would not necessarily aid Lifetime because the option, if treated as a mortgage, would presumably still have the priority provided by its recording date, and the title obtained by the purchaser at the foreclosure sale would be free and clear of Lifetime's lien. (Cf. 4 Miller & Starr, *supra*, § 10:231, pp. 763–764.)

█ Even if we assume that the negative implication that Lifetime draws from Civil Code section 2906 is correct, in order for the Option Agreement to be ineffective, it must be shown, among other facts, that (1) the option was granted by a debtor to a secured party and (2) the option was granted to acquire an interest in real property collateral. Here, according to the Option Agreement, the options were granted by FGHK to Shawmut Bank in exchange for $12,843. There is nothing in the record to suggest that FGHK borrowed any money from Shawmut Bank or that the two parties had any kind of debtor-creditor relationship. There is no evidence that FGHK was a "debtor," or that Shawmut Bank was a lender or a "secured party," within the meaning of these terms in Civil Code section 2906. It appears from the relevant evidence that Shawmut Bank owned an estate for years on the Property and paid FGHK for an option to purchase the Remainder interest in the Property. It could exercise the option upon the expiration of the estate for years or upon the occurrence of certain other events. Although the Option Agreement was but one part of a complex transaction involving other parties, there is nothing to indicate that the legal relationship between FGHK and Shawmut Bank was anything more than optionor and optionee under the Option Agreement.

Lifetime contends that FGHK was merely "a conduit for a disguised loan to [Kmart]." According to Lifetime, Kmart, as the "true borrower," gave the lender (Shawmut Bank) the option to purchase the Remainder using FGHK as "a mere conduit." Lifetime's argument, however, is based upon conjecture. Lifetime offers no evidence that Kmart received any loan funds (or that it was obligated to repay any funds it received for the sale of the interests in the Property to Shawmut Bank and FGHK), or that Shawmut Bank acted as a secured lender to anyone. Lifetime recognizes the lack of evidence to support

its theory when it asserts that it "should be given an opportunity to flesh out the nature of this transaction so as to demonstrate its true character and the applicability of Civil Code Section 2906 to it." Lifetime did not, however, apply to the trial court for a continuance of the hearing on the motion for summary adjudication to permit additional discovery (see Code Civ. Proc., § 437c, subd. (h)), and may not raise the matter for the first time on appeal (*Zamudio v. City and County of San Francisco* (1999) 70 Cal.App.4th 445, 454 [82 Cal.Rptr.2d 664]; *Lloyd Design Corp. v. Mercedes-Benz of North America, Inc.* (1998) 66 Cal.App.4th 716, 726 [78 Cal.Rptr.2d 185]).

Lifetime also points out that the optionee's rights under the Option Agreement were pledged as security for Shawmut Bank's debt to The Bank of New York in the Trust Indenture and subsequently included as collateral in the Deed of Trust. Lifetime further contends that a triable issue of material fact exists because the parties dispute whether the pledge of the option rights was made as part of the original transaction. Whether the option rights were pledged as security in the original transaction or later, however, is immaterial. The relevant issue under Civil Code section 2906 is whether the Option Agreement itself was made between a debtor and a secured party concerning real property that is collateral under a security agreement. Whether the optionee pledged its rights under the option to a lender (either concurrently with the option or later) has no bearing on this question.

■ Finally, with respect to the requirement in Civil Code section 2906 that the option be granted to acquire an interest in real property collateral, it is plain from the statutory language that the word "collateral" refers to collateral that secures a debt owed by the debtor-optionor to the secured party-optionee. Because no such debt is shown here, the Remainder is not *collateral* within the meaning of Civil Code section 2906. Therefore, the option granted to Shawmut Bank, while granted to acquire an interest in the Remainder, was not granted to acquire an "interest in real property *collateral.*"[5]

## DISPOSITION

PAT's motion to take additional evidence by judicial notice and make fact determinations is denied.

The judgment is reversed.

---

[5] To be an option described by Civil Code section 2906, "the right to exercise the option [must] not [be] dependent upon the occurrence of a default with respect to the security agreement." It is not clear whether this means that in order for the statute to be applicable, a default cannot trigger the right to exercise the option or whether a default cannot be the *only* basis for triggering the right to exercise. We need not, and do not, decide this issue.

Each party shall bear their own costs on appeal. (Cal. Rules of Court, rule 27(a)(4).)

Ramirez, P. J., and Richli, J., concurred.