Filed 10/30/13

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| WATER REPLENISHMENT DISTRICT OF SOUTHERN CALIFORNIA, | B242080 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. VC060489) |
| v. | |
| CITY OF CERRITOS, | |
| Defendant and Respondent. | |


APPEAL from an order of the Superior Court of Los Angeles County.  Raul A. Sahagun, Judge.  Reversed with directions.

Alston & Bird, Edward J. Casey, Neal P. Maguire and Lee J. Rosenberg for Plaintiff and Appellant.

Aleshire & Wynder, Patricia J. Quilizapa and Brandon Dominic Ward for Defendant and Respondent.

_____

A trial court in a related action made an interim order that the provisions of article XIII D of the California Constitution invalidated a replenishment assessment (assessment) imposed on the City of Cerritos (City) by the Water Replenishment District of Southern California (District), and thus the City was "entitled to mandamus relief commanding the [District] to vacate the [assessment] imposed by [the District] over the past four years." (*City of Cerritos et al. v. Water Replenishment District of Southern California* (Super. Ct. L.A. County, No. BS128136) (Proposition 218 Lawsuit).) Proposition 218, known as the Right to Vote on Taxes Act, was approved by the California voters at the November 5, 1996 General Election, amending the Constitution by adding article XIII D. (See Ballot Pamph., Gen. Elec. (Nov. 5, 1996) text of Prop. 218, p. 108 et seq.) Subsequent to the interim order in the Proposition 218 Lawsuit, the City stopped paying the assessment but continued to produce groundwater. This interim order is not before us for review in this appeal.

We are asked in this appeal to determine whether the trial court erred in denying the District's application for a preliminary injunction to enjoin the City from producing groundwater unless it pays the delinquent assessment. The District urges that pursuant to Water Code section 60339 the City should be so enjoined because the "pay first, litigate later" doctrine enshrined in section 32 of article XIII of the California Constitution requires the City to pay the assessment until the City receives a final judgment on the Proposition 218 Lawsuit.[1] We agree and conclude that the trial court erred in denying the District's application for a preliminary injunction because section 60339 authorizes the trial court to grant an injunction against an operator of a water-producing facility from producing groundwater if it is delinquent in the payment of an assessment, and under the doctrine of "pay first, litigate later," the City must pay the assessment until there is a final judgment in its Proposition 218 Lawsuit. We reverse the order of the trial court denying the District's application for a preliminary injunction and direct the court to enjoin the

---

[1] Undesignated statutory references are to the Water Code.

City from producing groundwater during the pendency of the Proposition 218 Lawsuit unless it pays the delinquent assessment.

## BACKGROUND

### A. The District

Prior to the formation of the District, groundwater was being produced from the Central Groundwater Basin (Central Basin) and the West Coast Groundwater Basin (collectively Basins) that provide water to residents in Los Angeles County in amounts that "greatly exceeded natural replenishment, creating a condition in the Basins known as 'overdraft.' That overdraft condition caused numerous problems, including drastic overall decline of the elevation of the groundwater table and the intrusion of seawater into the Basins." As a result of these concerns, in 1959 the District was formed by a vote of the citizens of Los Angeles County and pursuant to the Water Replenishment District Act enacted in 1955, codified at section 60000 et seq. (Stats. 1955, ch. 1514, § 1, p. 2755) (Water Replenishment Act). The District manages the Basins, which provide water for almost 4,000,000 residents in Los Angeles County. The District replenishes the groundwater under its jurisdiction by, among other things, buying and selling water; exchanging water; storing water; recycling water; injecting water into seawater barriers located along the coast and spreading water at the Montebello Forebay; "build[ing] the necessary works to achieve ground water replenishment"; and "manag[ing] and control[ing] water for the beneficial use of persons or property within the district." (§ 60221.) On an annual basis, the District conducts an engineering survey to determine the state of groundwater supplies and total production of groundwater for "both the current year and the following year," holds a public hearing to determine the estimated costs of replenishing the groundwater supplies, and then adopts a resolution, levying an assessment on the production of groundwater from the Basins. (§§ 60300, 60306, 60315.)

3

**B. The Proposition 218 Lawsuit**

### 1. The 2010–2011 assessment

In May 2010, the District adopted a resolution which levied an assessment on the production of groundwater for the 2010–2011 fiscal year. In August 2010, the City and the cities of Downey and Signal Hill filed the Proposition 218 Lawsuit (petition for a writ of mandate and complaint) against the District, claiming the assessment was invalidated by article XIII D of the California Constitution on the grounds that the District had failed to follow the procedures to increase an assessment. The Proposition 218 Lawsuit alleged causes of action seeking a writ of mandate; declaratory relief; and damages for recovery of the assessment levied and collected by the District, allegedly in violation of Proposition 218 and the Water Replenishment Act. Specifically, the Proposition 218 Lawsuit requested damages for payments made to the District pursuant to each "illegal" assessment in the amount of at least $19 million, according to proof; an accounting and repayment by the District of all fees collected in excess of its statutory authority; and damages, including overpayments resulting from the District's violation of the Water Replenishment Act, according to proof. The Proposition 218 Lawsuit challenged the District's assessment for the fiscal year 2010–2011 and earlier years on the ground that "[s]ince the voters passed Proposition 218 in 1996, . . . [the District] has consistently disregarded [Proposition 218's] procedural mandates and its prohibition against imposing excessive fees." The Proposition 218 Lawsuit sought "mandamus relief commanding [the District] to vacate the [assessment] imposed by [the District] over the past four years, and to comply with [Proposition 218] before imposing any [assessment]." The Proposition 218 Lawsuit also sought declaratory relief as to whether the 2010–2011 and earlier assessment is subject to Proposition 218.

The writ and declaratory relief portions of the Proposition 218 Lawsuit were held before Judge James C. Chalfant. On April 25, 2011, Judge Chalfant ruled that Proposition 218 applied to the assessment; the District had failed to comply with the procedural requirements of Proposition 218; and "[the City, Downey, and Signal Hill] are entitled to mandamus relief commanding the [District] to vacate the [assessment]

4

imposed by [the District] over the past four years, and to comply with the provisions of [Proposition 218] before imposing any new [assessment]" (April 2011 Order). At the hearing, after being informed that the Proposition 218 Lawsuit also alleged claims for damages which had been bifurcated, Judge Chalfant stated, "I didn't know you had other claims. Let's talk about what happens. I can't issue the writ until there's a final judgment; that means no writ until your damages case is over. You understand that I will have made a ruling here, but there is no writ; they don't have to do anything until there's a judgment in the case. [¶] . . . [¶] . . . So the last paragraph I'm going to have to delete about preparing a judgment and a writ. The matter will be transferred to the trial court for the other claims. [¶] That's what I'm going to do. No writ will issue until there's a judgment. I'm adopting the tentative as my order striking the very last paragraph about preparation of a judgment and writ. [¶] The matter will be transferred to the trial court for resolution of the damages claims."

The District's subsequent motion for reconsideration of the April 2011 Order was denied on June 13, 2011.

The Proposition 218 Lawsuit's claim for monetary relief was transferred to Judge Ralph W. Dau on January 3, 2012.

### 2. *The 2011–2012 assessment*

In May 2011, the District adopted a resolution that levied an assessment on the production of groundwater for the 2011–2012 fiscal year.

Subsequently, the Central Basin Municipal Water District and Tesoro Refining and Marketing Company separately filed petitions for mandamus and complaints for declaratory relief, claiming that Proposition 218 applies to the District's 2011–2012 assessment in, respectively, *Central Basin Municipal Water District v. Water Replenishment District of Southern California* (Super. Ct. L.A. County, No. BS132202) and *Tesoro Refining and Marketing Company v. Water Replenishment District of Southern California* (Super. Ct. L.A. County, No. BS134239). The Proposition 218 Lawsuit was ordered related to those cases. According to the District's opening brief, in September 2012 Judge Chalfant ruled in *Central Basin* and *Tesoro* that the District was

5

required to comply with Proposition 218's procedures when it adopted the 2011–2012 assessment.

## C. The District's complaint

After Judge Chalfant issued the April 2011 Order in the Proposition 218 Lawsuit, the City, Downey, and Signal Hill stopped paying the assessment. The District informed the City, Downey, and Signal Hill that the assessment must be paid because no final judgment had been entered that excused them from paying the assessment. The District offered, but the City, Downey, and Signal Hill declined to enter into an agreement with the District "to toll the statute of limitation on any claim [it] may have for a refund of the [assessment] based on the applicability of Prop[osition] 218 until a final appellate decision has been entered on that issue" and to continue to pay the assessment until a final judgment has been reached. According to a declaration submitted in support of the District's application for a preliminary injunction against the City, other groundwater producers in the Basins have entered into such agreements with the District.

On February 8, 2012, the District filed a complaint against the City, alleging causes of action for collection of delinquent assessment; account stated; open book account; and injunctive relief (the District's complaint). The District's complaint alleged the following. On May 11, 2010, the District levied an assessment on the groundwater produced during the fiscal year July 1, 2010, through June 30, 2011. On May 6, 2011, the District levied an assessment on the groundwater produced during the fiscal year July 1, 2011, through June 30, 2012. "On April 25, 2011, in a writ hearing in [the Proposition 218 Lawsuit], the Hon. James Chalfant issued [the April 2011 Order] that the requirements of [Proposition 218] applied to the [assessment] that [the District] had imposed for the [2006–2007, 2007–2008, 2008–2009, 2009–2010 and 2010–2011] fiscal years, and that [the District] had failed to comply with [Proposition 218] procedures. Judge Chalfant made no ruling with respect to the [2011–2012 assessment]. Moreover, no final judgment or writ of mandate will be issued in [the Proposition 218 Lawsuit] until after the trial to determine the refund, if any, due to [the City, Downey, and Signal Hill]. The Court's [April 2011 Order] specifically stated: 'No Writ is to be issued until all

6

matters have been resolved.' A trial date on the remaining issues is not currently set. Accordingly, there is no judgment yet in effect that renders any . . . assessment invalid, nor is [the District] currently required to take any action with respect to the [2011–2012 assessment]."

The District's complaint further alleged that on July 12, 2011, the City sent the District a letter stating that based on the April 2011 Order in the Proposition 218 Lawsuit, "'[the District] has no authority to impose or collect the [assessment] from [the City, Downey, and Signal Hill] and [the City] 'will not pay [the District's] illegal invoices.'" From June 2, 2011, the City has failed to make payments due. As to the first cause of action for collection of the delinquent assessment, the District is entitled to collect the delinquent assessment owed by the City, as well as interest on the delinquent assessment, pursuant to section 60335. As to the second cause of action for account stated, the District maintains a "'book account'" of the City's production of groundwater and the City is indebted to the District in the sum of $1,560,262.76 on an account stated. As to the third cause of action for open book account, the District maintains a "'book account'" of the City's production of groundwater and the City is indebted to the District in the sum of $1,560,262.76 on an open book account. As to the fourth cause of action for injunctive relief, the City is delinquent on the assessment due and payable under invoices for the months ending March 31, 2011, through November 30, 2011, in the total amount of $1,560,262.76. The District is "entitled to the grant of an injunction . . . restraining and prohibiting [the City] from the operation of any of its water-producing facilities" until the delinquent assessment and authorized interest are paid.

## D. Related complaints

The record on appeal shows the following. The District filed similar separate complaints against Downey, Signal Hill, Bellflower, and Pico Rivera. On February 16, 2012, the District filed a notice of related cases, seeking to relate the District's action against the City to its actions against Downey, Signal Hill, and Bellflower. Those matters were ordered related. The City filed a notice of related cases, seeking to relate the District's actions against the City, Signal Hill, and Bellflower to the monetary claims

7

in the Proposition 218 Lawsuit pending before Judge Dau. On March 15, 2012, Judge Dau declined to relate those matters. The City, Downey, and Signal Hill then filed motions with Presiding Judge Carolyn B. Kuhl to relate the District's actions to the monetary claims in the Proposition 218 Lawsuit pending before Judge Dau. On April 26, 2012, Judge Kuhl issued a ruling that: (1) related the District's actions against the City, Signal Hill, and Bellflower to the Proposition 218 Lawsuit pending before Judge Dau; (2) transferred the District's actions to Judge Dau; and (3) vacated all further proceedings in the District's actions pending in the Southeast District of the Superior Court. Judge Kuhl noted that because Judge Dau's "order did not include the propriety of relating the District's collection cases against Downey and Pico Rivera . . . [t]his motion is therefore limited to a determination of whether [the City, Signal Hill,] and Bellflower collection actions should be related to the [Proposition 218 Lawsuit]." Judge Kuhl ordered Judge Sahagun to retain jurisdiction over the pending injunction motions. According to the District's opening brief, on October 26, 2012, Judge Dau related the District's action against Downey to the Proposition 218 Lawsuit. It is unclear from the record if and when the District's action against Pico Rivera was ordered related to the Proposition 218 Lawsuit.

## E. The District's application for a preliminary injunction

Meanwhile, on February 16, 2012, the District filed an application for a preliminary injunction against the City, requesting that the trial court issue a preliminary injunction pursuant to section 60339, "enjoining [the City] from producing or extracting groundwater from the Central Groundwater Basin until [the City] complies with its obligation under . . . Section 60000 et seq., including but not limited to Sections 60327, 60327.1, 60335 and 60339, and pay to [the District the outstanding assessment] and applicable interest and penalties, which total approximately $1,719,018.92 as of the date of this Motion."

The declaration of Robb Whitaker, general manager of the District, attached to the application for a preliminary injunction stated that in March 2011 the City, Downey, and Signal Hill stopped paying the assessment. The unpaid assessment owed by the City,

8

Downey, and Signal Hill totaled $5,236,647.69 as of December 31, 2011. Whitaker declared, "Based on [the District's] budget for fiscal year 2011/2012, [the District's] annual revenue was projected to be approximately $72 million, of which the [assessment] represented 82.3% of that revenue. The unpaid [assessment] owed from [the City, Downey, and Signal Hill] represents 11.85% of that [assessment] revenue." For fiscal year 2011–2012, "the total unpaid [assessment] based on a five year average of [the City, Downey, and Signal Hill's] groundwater production is approximately $7 million for [the City, Downey, and Signal Hill]. This loss of income would result in one of the following impacts: (1) Bring the projected balance of [the District's] unencumbered general Reserve Fund from a positive $6 million to a negative of almost $200,000, effectively bankrupting that important reserve; (2) Reduce the District's ability to purchase approximately 10,000 acre feet ('AF') of imported water . . . for groundwater replenishment in the Montebello Forebay, which is almost half of [the District's] total average annual imported spreading water demand. In addition to those impacts, commencing in Fiscal Year 2012–13, [the District] will need to increase the . . . assessment by a minimum of $65.40/AF on pumpers that are currently paying the . . . assessment to offset the loss of revenue due to non-payment by [the City, Downey, and Signal Hill] to make up for the lost revenue from Fiscal Year 2011–12 so that [the District] can purchase replenishment water offset by that lack of that revenue and make up for anticipated loss of revenue for non-payment of the . . . assessment in Fiscal Year 2012–13. In evaluating these impacts, it is important to note that [i]n its May 2002 report on [the District], the California State Auditor stated, 'The [D]istrict projects that it will have a reserve fund balance of slightly more than $6 million at June 30, 2002, a level that may pose a threat to the [D]istrict's ability to maintain the current quantity of groundwater in the basins.'" Whitaker further declared that "[a]t the present time, [the City] is producing groundwater without paying [the District's assessment]. If [the City] cannot produce groundwater, then it can readily take additional imported surface water provided by the Metropolitan Water District ('MWD') at a service connection that is located in [the City]. . . . Generally, the cost of producing groundwater from the Central

9

Basin, including the [assessment], is much less than the cost of purchasing water provided by MWD."

In opposition to the District's application for a preliminary injunction, the City attached the declaration of Vince Brar, senior assistant city manager with the City. Brar declared, "The City made its last payment to [the District] on April 7, 2011." The City may purchase additional imported water from the Central Basin Municipal Water District only if it is available and "at the much higher tier 2 pricing structure." Brar declared that "an injunction restraining the City from operating its wells is likely to result in the City shutting off water to its residents, businesses and government agencies within a week." (Boldface omitted.)

After taking the matter under submission, on April 27, 2012, Judge Sahagun ruled, "[The District's] motions for preliminary injunction are DENIED WITHOUT PREJUDICE. [¶] On April 26, 2012 . . . Judge Kuhl ruled that this and the other Water Replenishment District cases were related and, accordingly, will assign them to a single judge or department. [Super. Ct. L.A. County Local Rules, rule] 3.3(f)(3). This case will be transferred to that assigned judge, who will have jurisdiction to rule on any renewed motion. [Cal. Rules of Court, rule] 3.300 (h)(1)." On April 27, 2012, Judge Kuhl issued a nunc pro tunc order correcting the order of April 26, 2012, by adding, "'Any matters that are under submission in the cases herein ordered to be related are to be determined by the judge who took the matter under submission.'"

After the transfer of the District's actions to Judge Dau, on May 3, 2012, the District filed a "request for hearing on renewed motion for preliminary injunction" before Judge Dau. The City, Downey, and Bellflower filed opposition, contending that the District's request for a hearing was "nothing more than a Motion for Reconsideration under California Code of Civil Procedure section 1008(a–b)." On May 11, 2012, the District filed an ex parte application for an order shortening notice of hearing on a renewed motion for a preliminary injunction and setting a hearing date, which was denied by Judge Dau. On May 21, 2012, the District filed a "motion for clarification or, in the alternative, for reconsideration of ruling at *ex parte* hearing concerning applicability of

10

[Code of Civil Procedure] section 1008 to renewed motion for preliminary injunction." Judge Dau "declined to rule on the Motion because the Court found the Motion to be procedurally inappropriate."

The District moved for summary adjudication on the third cause of action for monetary damages in the Proposition 218 Lawsuit. The District argued that the City, Downey, and Signal Hill "cannot prevail on their third cause of action because [the District's] enabling statute does not permit a refund under the facts of this case, and, in any event, [the City, Downey, and Signal Hill] never submitted a claim for money damages that complied with [the District's] Claims Presentation Procedure." On December 11, 2012, Judge Dau denied the District's motion. Judge Dau observed that section 60328 allows refunds to a producer who has "'erroneously overstated his production of ground water'" and has complied with the claims presentation procedure. He concluded that statute does not apply here, where the assessment is claimed to be unconstitutional, rather than as a result of an erroneous overstatement by the producer. But Judge Dau noted that the District properly had enacted an ordinance that set forth a claims presentation procedure.[2] (Water Replenishment Dist. of Southern Cal. Admin. Code (Dec. 2011 rev.) § 19.1.) As Judge Dow stated, that claims presentation procedure "'govern[s] all claims against the District for money or damages which are [excepted] by Government Code Section 905, and which are not governed by any other statutes or regulations expressly relating to such claims.'. . . Entities having any claim for damages against [the District] must file a claim 'in accordance with the procedures set forth [in the claims presentation procedure] as a prerequisite to the filing of any lawsuit against the District.'"[3] The procedure includes presenting the District with a claim showing the

---

[2] We take judicial notice of the District's Administrative Code. (Evid. Code, §§ 452, 459.)

[3] Government Code section 905 provides in part: "There shall be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) all claims for money or damages against local public entities except any of the following: [¶] . . . [¶] (i) Claims by the state or by a state department or agency or by another local public entity or by a judicial branch entity."

name and address of the claimant, the dates and circumstances of the transaction giving rise to the claim asserted, and a general description of the damages incurred.  (Water Replenishment Dist. of Southern Cal. Admin. Code, § 19.1.4, subds. (a)–(d).)  The claims presentation procedure states, "If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim.  However, the claim shall indicate whether jurisdiction over the claim would rest in municipal or superior court, in the event a lawsuit is filed on the claim." (*Id.*, § 19.1.4, subd. (f).)  Judge Dau held that the City, Downey, and Signal Hill had substantially complied with the District's claims presentation procedure as a prerequisite to the filing of any lawsuit against the District.

The District appealed from Judge Sahagun's April 27, 2012 order denying its application for a preliminary injunction against the City.  Downey, Signal Hill, Bellflower, and Pico Rivera are not involved in this appeal.

## DISCUSSION

### A.  Standard of Review

"In deciding whether to issue a preliminary injunction, a court must weigh two 'interrelated' factors:  (1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or nonissuance of the injunction.  [Citation.]" (*Butt v. State of California* (1992) 4 Cal.4th 668, 677–678.)

"The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction.  [Citation.]  Of course, '[t]he scope of available preliminary relief is necessarily limited by the scope of the relief likely to be obtained at trial on the merits.'  [Citation.]  A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim.  [Citation.]  Unless potential merit is conceded, an appellate court must therefore address that issue when reviewing an order granting a preliminary injunction." (*Butt v. State of California*, *supra*, 4 Cal.4th at p. 678.)

12

On appeal, "[o]rdinarily, an order granting or denying a preliminary injunction or granting or denying a motion to dissolve an injunction is reviewed under the abuse of discretion standard. [Citation.] However, where the grant or denial of a preliminary injunction is dependent upon construction of a statute, and the matter is purely a question of law, the standard of review is not whether discretion was appropriately exercised, but whether the statute was correctly construed. [Citations.]" (*Garamendi v. Executive Life Ins. Co.* (1993) 17 Cal.App.4th 504, 512–513.)

**B. The trial court erred in denying the District's application for a preliminary injunction**

*1. Section 60339 authorizes the trial court to grant an injunction against a producer from producing groundwater if it is delinquent in the payment of an assessment*

The District urges that pursuant to section 60339 the City should be enjoined during the trial court proceedings in the Proposition 218 Lawsuit from producing groundwater unless it pays the delinquent assessment. We agree because section 60339 authorizes the trial court to grant an injunction against a producer from producing groundwater if it is delinquent in the payment of an assessment.

In *IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63 (*IT Corp.*), where "a governmental entity [sought] to enjoin an alleged violation of a zoning ordinance which provides for injunctive relief," our Supreme Court considered the question of whether to apply the traditional factors of "the likelihood that the plaintiff will prevail on the merits at trial" and "the interim harm that the plaintiff is likely to sustain if the injunction were denied as compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued." (*Id.* at p. 69–70.) The court noted, "Where a legislative body has enacted a statutory provision proscribing a certain activity, it has already determined that such activity is contrary to the public interest. Further, where the legislative body has specifically authorized injunctive relief against the violation of such a law, it has already determined (1) that significant public harm will result from the proscribed activity, and (2) that injunctive relief may be the most appropriate way to protect against

13

that harm. [Citation.]" (*Id*. at p. 70.) Accordingly, "Where a governmental entity seeking to enjoin the alleged violation of an ordinance which specifically provides for injunctive relief establishes that it is reasonably probable it will prevail on the merits, a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the defendant. If the defendant shows that it would suffer grave or irreparable harm from the issuance of the preliminary injunction, the court must then examine the relative actual harms to the parties." (*Id*. at p. 72.)

Here, section 60339, subdivision (b) authorizes the trial court to grant an injunction against a producer from producing groundwater if it is delinquent in the payment of an assessment.[4] Specifically, subdivision (b) states, "The court may issue and grant an injunction restraining and prohibiting the named defendant from the operation of any water-producing facility when it is established by the preponderance of

---

[4] Section 60339 provides as follows: "(a) The superior court of the county in which the major portion of the district lies may issue a temporary restraining order upon the filing by the district with the court of a verified petition or complaint setting forth that the person named therein as defendant is the operator of a water-producing facility which has not been registered with the district or that the defendant is delinquent in the payment of a replenishment assessment. The temporary restraining order shall be returnable to the court on or before ten (10) days after its issuance. [¶] . . . [¶] (b) The court may issue and grant an injunction restraining and prohibiting the named defendant from the operation of any water-producing facility when it is established by the preponderance of the evidence at a hearing that the defendant has failed to register the water-producing facility with the district or that the defendant is delinquent in the payment of a replenishment assessment. The court may provide that the injunction so made and issued shall be stayed for a period not to exceed 10 days to permit the defendant to register the water-producing facility or to pay the delinquent replenishment assessment. [¶] (c) Service of process shall be made by posting a copy of the summons and complaint upon the water-producing facility or the parcel of land upon which the water-producing facility is located and by personal service of summons and complaint upon the named defendant. [¶] (d) The right to proceed for injunctive relief as provided in this section shall be in addition to any other right which may be provided elsewhere in this act or which may be otherwise allowed by law. The procedure provided in Chapter 3 (commencing with Section 525) of Title 7 of Part 2 of the Code of Civil Procedure regarding injunctions shall be followed except insofar as it may be otherwise provided in this section."

the evidence at a hearing that the defendant . . . is delinquent in the payment of a replenishment assessment."

Because the evidence establishes that the City is delinquent in the payment of the assessment, the trial court erred in refusing to grant the District's application for a preliminary injunction. Whether the City made its last payment in March 2011, as attested to by Whitaker, or in April 2011, as attested to by Brar, it failed to pay the assessment for fiscal years 2010 to 2011 and 2011 to 2012 and is therefore delinquent. As we discuss in part B.2., *post*, under the "pay first, litigate later" doctrine, the City cannot raise a defense against the payment of the assessment during the pendency of the Proposition 218 Lawsuit. And while the City might ultimately prevail in the Proposition 218 Lawsuit, it is not likely that even after a final judgment the City will be allowed to continue to produce groundwater without having paid any assessment whatsoever. (*Simms v. County of Los Angeles* (1950) 35 Cal.2d 303, 316 [in action to recover taxes paid under protest, recovery limited to difference between tax actually paid and that which properly should have been exacted]; *Macy's Dept. Stores, Inc. v. City and County of San Francisco* (2006) 143 Cal.App.4th 1444, 1459 [where city tax violated federal and state Constitutions, business entitled to refund in amount sufficient to remedy potential discriminatory burden, but not entitled to full refund which would place it in a more favorable position than local taxpayer].) It is likely that the District will prevail on the merits as to the issue of unpaid assessment, at least in part, and therefore a rebuttable presumption arises that the potential harm to the public outweighs the potential harm to the City. (*IT Corp.*, *supra*, 35 Cal.3d at p. 72.) And, as we discuss later in detail, the City has not established it will suffer grave or irreparable harm from the issuance of the preliminary injunction. Thus, the trial court did not need to examine the relative actual harm to the parties and neither do we.

We are not persuaded by the City's argument that "once it is established that the defendant is delinquent on the [assessment], [section 60399] specifically requires a district to follow the procedures of the Code of Civil Procedure in order to obtain a preliminary injunction" and that "Judge Sahagun ruled that [the District] did not meet the

15

standard [of Code of Civil Procedure section 527]." As the Water Replenishment Act states, "The right to proceed for injunctive relief as provided in this section shall be in addition to any other right which may be provided elsewhere in this act or which may be otherwise allowed by law. The procedure provided in Chapter 3 (commencing with Section 525) of Title 7 of Part 2 of the Code of Civil Procedure regarding injunctions shall be followed, *except insofar as it may be otherwise provided in this section*." (§ 60339, subd. (d), italics added.)

> ### 2. Under the doctrine of "pay first, litigate later," the City must pay the assessment or cease producing groundwater until there is a final judgment in the Proposition 218 Lawsuit

The District contends that the "pay first, litigate later" doctrine enshrined in section 32 of article XIII of the California Constitution requires the City to pay the assessment or cease producing groundwater until the City receives a final judgment in the Proposition 218 Lawsuit. We agree. As noted, Judge Chalfant's April 2011 Order that Proposition 218 applies to the assessment is not before us in this appeal.

"'A taxpayer ordinarily must pay a tax before commencing a court action to challenge the collection of the tax. This rule, commonly known as "pay first, litigate later" is well established and is based on a public policy reflected in the state Constitution, several statutes, and numerous court opinions.' [Citation.] Section 32 [of article XIII of the California Constitution] provides: 'No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature.' This constitutional provision establishes that 'the sole legal avenue for resolving tax disputes is a postpayment refund action. A taxpayer may not go into court and obtain adjudication of the validity of a tax which is due but not yet paid. [¶] The important public policy behind this constitutional provision "is to allow revenue collection to continue during litigation so that essential public services dependent on the funds are not unnecessarily interrupted." [Citation.] "The fear that persistent

16

interference with the collection of public revenues, for whatever reason, will destroy the effectiveness of government has been expressed in many judicial opinions."' [Citation.]" (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.)

"It is well established that the applicability of section 32 [of article XIII of the California Constitution] does not turn on whether the action at issue specifically seeks to prevent or enjoin the collection of a tax. Instead, the provision bars 'not only injunctions but also a variety of prepayment judicial declarations or findings which would impede the prompt collection of a tax.' [Citation.] The relevant issue is whether granting the relief sought would have the effect of impeding the collection of a tax. [Citation.]" (*California Logistics, Inc. v. State of California*, *supra*, 161 Cal.App.4th at pp. 247–248.)

The City argues that section 32 of article XIII of the California Constitution does not apply because the City is not seeking to enjoin the assessment; it is the District that is seeking an injunction. But the City is urging a defense seeking "'prepayment adjudication that would effectively prevent the collection of a tax,'" which is barred by *Riverside County Community Facilities Dist. v. Bainbridge 17* (1999) 77 Cal.App.4th 644, 661 (*Riverside*). In *Riverside*, property owner defendants defaulted on their obligation to pay "special taxes" for roads and utilities levied by a community facilities district (CFD) against their property, arguing that the "special taxes" were invalid. (*Id.* at p. 651.) CFD filed a complaint against the defendants "to foreclose the liens of special taxes imposed on the two properties." (*Ibid.*) In affirming the trial court's grant of summary judgment in favor of CFD, the Court of Appeal held that the defendants could not "prevent collection of these taxes by precluding a judgment of foreclosure," noting that Revenue and Taxation Code section 4807, which conforms with California Constitution, article XIII, section 32, provides that no injunction, writ of mandate, or other legal or equitable process shall issue to prevent or enjoin the collection of property taxes sought to be collected. (*Riverside*, *supra*, 77 Cal.App.4th at p. 660.) The Court of Appeal determined, "Thus, any legal action or defense seeking 'prepayment adjudication that would effectively prevent the collection of a tax [is] barred.' [Citation.]" (*Id.* at p. 661; *Community Facilities District v. Harvill* (1999) 74 Cal.App.4th 876, 882 [where

17

property owners' "special taxes" remain unpaid, trial court cannot prevent collection of taxes in CFD's action to foreclose lien of "special taxes" on property].) Accordingly, we conclude that under the doctrine of "pay first, litigate later" in the California Constitution, article XIII, section 32, the City must pay the assessment or stop producing groundwater until there is a final judgment in the Proposition 218 Lawsuit.

Nevertheless, the City argues that (1) the "pay first, litigate later" doctrine does not apply to the District; (2) the City "*did* pay first and *then* litigated the validity of the [assessment]"; (3) "no authority exists holding as a matter of law that [the City] must pay the [assessment] 'until there is a final judgment'"; and (4) the public policy arguments in favor of preserving public funds weigh equally between the parties. We discuss each argument in turn.

We disagree with the City's first argument that the "pay first, litigate later" doctrine does not apply to the District. The City cites *City of Anaheim v. Superior Court* (2009) 179 Cal.App.4th 825 (*City of Anaheim*) for the proposition that the "pay first, litigate later" doctrine applies only to actions against the state or state officers, or to other public agencies if the agency has adopted a "pay first, litigate later" ordinance, or if the trial court finds that the doctrine should apply as a matter of public policy.

*Chodos v. City of Los Angeles* (2011) 195 Cal.App.4th 675 (*Chodos*) offers guidance as to the applicability of the doctrine to local governments. In that case, without first availing himself of the administrative procedure set forth in the Los Angeles Municipal Code or making a tax payment and then suing in superior court for a refund, the plaintiff sued the City of Los Angeles for declaratory relief, challenging the City of Los Angeles's assessment of business taxes against him. (*Id*. at pp. 676–677.) The *Chodos* court affirmed the trial court's sustaining the demurrer to the plaintiff's complaint on the ground that the plaintiff did not comply with the "'pay first, litigate later' rule." (*Id*. at p. 677.) *Chodos* holds that the "pay first, litigate later" doctrine applies to local governments as a matter of public policy. (*Id*. at pp. 679–680.) It states, "[W]ith regard to an effort to enjoin a tax, there is a 'strong public policy requiring a taxpayer to pay the tax and sue for a refund.' That public policy should apply to

18

declaratory relief actions, which would have the same effect as injunction actions." (*Id.* at p. 680; *Writers Guild of America, West, Inc. v. City of Los Angeles* (2000) 77 Cal.App.4th 475, 481–483 (*Writers Guild*) [strong public policy against enjoining collection of taxes, requiring taxpayer to pay tax, then sue for refund, applies to city business tax on writers].)

Similarly, *Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65 (*Batt*), disapproved on other grounds in *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626, states that the "'pay first, litigate later' rule . . . applies at all levels of government—the federal (26 U.S.C. §§ 7421(a), 7422(a); 28 U.S.C. §§ 1346(a)(1), 2201(a); *Flora v. United States* (1958) 357 U.S. 63, 67–75 [2 L.Ed.2d 1165, 78 S.Ct. 1079]; *Cheatham et al. v. United States* (1875) 92 U.S. 85, 88–89 [23 L.Ed. 561]; the state (Cal. Const., art. XIII, § 32; Rev. & Tax. Code, §§ 6931 [sales and use taxes], 19381, 19382 [franchise and income taxes]; *State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 638; and the local (Rev. & Tax. Code, §§ 4807, 5140 [property taxes]; S.F. Bus. & Tax Regs. Code, § 6.15–4, subd. (a) [persons challenging tax 'must first pay the amount of the disputed tax . . . prior to seeking judicial relief']; *Flying Dutchman* [*Park, Inc. v. City and County of San Francisco* (2001) 93 Cal.App.4th 1129, 1136–1138 (*Flying Dutchman*)]; *Writers Guild*[, *supra*,] 77 Cal.App.4th 475, 483." (*Batt*, *supra*, 155 Cal.App.4th at pp. 71–72.)

And *Chodos* observed that *City of Anaheim*, *supra*, 179 Cal.App.4th 825, had "suggested" that the public policy underlying the "pay first, litigate later" doctrine embodied in section 32 of article XIII of the California Constitution did not apply where "the tax collection procedures had not been disrupted but rather were delayed by the city's inaction." (*Chodos*, *supra*, 195 Cal.App.4th at p. 679.) *Chodos* disagreed with *City of Anaheim*'s "language to the extent it is inconsistent with the pronouncements in *Writers Guild*, *supra*, 77 Cal.App.4th at page 481, and *Flying Dutchman*, *supra*, 93 Cal.App.4th at pages 1135–1136, that the 'pay first' principle applies to local governmental entities as a matter of public policy." (*Chodos*, at pp. 679–680.) We follow *Chodos*, *Writers Guild*, and *Flying Dutchman* in concluding that as a matter of

19

public policy the "pay first, litigate later" doctrine of section 32 of article XIII of the California Constitution applies here.

Nonetheless, the City urges that the "'pay first, litigate later' doctrine is inapplicable when the public agency does not make an administrative refund process available," relying on *City of Anaheim*. *City of Anaheim* concerned the assessment of a "'transient occupancy tax'" against online travel companies and held that section 32 of article XIII of the California Constitution applies only to actions against the state or an officer of the state, except in certain circumstances. (*City of Anaheim*, *supra*, 179 Cal.App.4th at pp. 827, 830–831.) *City of Anaheim* observed that if a local government had a "pay first, litigate later" provision in the ordinance at issue and a refund procedure which comported with due process, it could avail itself of the "pay first, litigate later" doctrine. (*Id*. at pp. 831–832.)

As Judge Dau correctly noted, the District has a refund procedure in the form of its claims presentation procedures for money or damages that was absent in the *City of Anaheim* case. And the claims presentation procedures here are substantially similar to the claims presentation procedure at issue in *Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241 (*Arden*), where our Supreme Court stated, "We have . . . determined that [Government Code] section 910 provides the necessary legislative authorization for class claims of taxpayer refunds against local governmental entities." [5] (*Ardon*, at p. 252.)

---

[5] Government Code section 910 provides, "A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following: [¶] (a) The name and post office address of the claimant. [¶] (b) The post office address to which the person presenting the claim desires notices to be sent. [¶] (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted. [¶] (d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim. [¶] (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known. [¶] (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar

We reject the City's second argument that because it stopped paying the assessment only after Judge Chalfant issued the April 2011 Order, it "*did* pay first and *then* litigated the validity of the [assessment]." Not so. In answer to the City's third argument as well, section 32 of article XIII of the California Constitution "prohibits courts from 'prevent[ing] or enjoin[ing] the collection of any tax' *during the pendency of litigation challenging the tax.* (Cal. Const., art. XIII, § 32.)" (*Ardon*, *supra*, 52 Cal.4th at p. 252.) We conclude that the term "the pendency of litigation," as expressed in *Ardon*, means until a final judgment is reached. As noted, in making the April 2011 Order, Judge Chalfant commented that no writ could issue until the damages case is final. The April 2011 Order is an interim order and is not yet final. The damages portion of the Proposition 218 Lawsuit is still pending, and the amount of the assessment to be invalidated, if any, has not been determined. It follows that the City must pay the assessment until there is a final judgment.

We disagree with the City's fourth argument that the public policy arguments in favor of preserving public funds weigh equally between the parties as a matter of law. The District manages the groundwater resources in the Basins, which provide water for almost 4,000,000 residents in Los Angeles County. The District's actions are designed to prevent the overdraft condition—the decline of the elevation of the groundwater table and the intrusion of seawater into the Basins. According to Whitaker, the unpaid assessment owed by the City, Downey, and Signal Hill total $5,236,647.69 as of December 31, 2011. For fiscal year 2011–2012, the total unpaid assessment based on a five-year average of groundwater production is approximately $7 million for the City, Downey, and Signal Hill. This will result in either reducing the District's "'unencumbered' general Reserve Fund from a positive $6 million to a negative of almost $200,000, effectively bankrupting that import reserve"; or reducing the District's ability to purchase approximately 10,000 acre feet of imported water for groundwater replenishment. The City, on the other hand, is availing itself of groundwater from the Basins without paying the assessment, putting

amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case."

21

the quantity of groundwater in the Basins at risk, and potentially leading to the overdraft condition which resulted in the formation of the District in the first instance. We disagree with the City's argument that "public policy arguments in favor of preserving public funds weigh equally between the parties." If the City is enjoined from producing groundwater until it pays the assessment, it merely will be required to pay the assessment in order to produce groundwater as it has done in the past and will not suffer irreparable harm. As noted, it is not likely that the Proposition 218 Lawsuit will result in the City being allowed to produce groundwater without paying any assessment whatsoever.

Finally, the City in this appeal does not contend that the assessment is not a "tax" within the meaning of section 32 of article XIII of the California Constitution. As stated, the "pay first, litigate later" doctrine has been applied to a wide variety of taxes. (*California Logistics, Inc. v. State of California*, *supra*, 161 Cal.App.4th at p. 246 [proposed notice of assessment included "amounts for unemployment insurance, personal income taxes that should have been withheld from the [employee's] wages, and other taxes]; *First Aid Servs. of San Diego, Inc. v. California Employment Development Dept.* (2005) 133 Cal.App.4th 1470, 1480 [challenges concerning collection of unemployment insurance contributions]; *Brown v. County of Los Angeles* (1999) 72 Cal.App.4th 665, 670 [documentary transfer tax]; *Shiseido Cosmetics (America), Ltd. v. Franchise Tax Bd.* (1991) 235 Cal.App.3d 478, 486 [state franchise tax contributions]; *Western Oil & Gas Assn. v. State Bd. of Equalization* (1987) 44 Cal.3d 208, 213 [State Board of Equalization's request for information regarding assessment on intercounty pipelines].) And Proposition 218 recited: "FINDINGS AND DECLARATIONS. The people of the State of California hereby find and declare that Proposition 13 was intended to provide effective tax relief and to require voter approval of *tax increases*. However, local governments have subjected taxpayers to *excessive tax, assessment, fee and charge increases* that not only frustrate the purposes of voter approval for tax increases, but also threaten the economic security of all Californians and the California economy itself. This measure protects taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent." (Prop. 218, § 2, reprinted at Historical

22

Notes, 2B West's Ann. Cal. Const. (2013 ed.) foll. art. XIII C, p. 363, italics added.) The City cannot claim the assessment is not a "tax" and at the same time seek protection under Proposition 218, which seeks to maintain the intentions of Proposition 13.

Because the City must pay the assessment under the doctrine of "pay first, litigate later" enunciated in section 32 of article XIII of the California Constitution, the trial court erred in denying the District's application for a preliminary injunction. Accordingly, we direct the court to issue an order enjoining the City from producing groundwater during the pendency of the Proposition 218 Lawsuit unless it pays the assessment. But the City is not required to pay accrued interest on any delinquent assessment. (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 326–327 [section 32, article XIII, of California Constitution may not be construed to require prepayment of accrued interest as well as tax as condition to litigation challenging tax].)

## DISPOSITION

The order denying the Water Replenishment District of Southern California's application for a preliminary injunction is reversed with directions to the trial court to issue an order enjoining the City of Cerritos from producing groundwater during the pendency of the Proposition 218 Lawsuit (*City of Cerritos et al. v. Water Replenishment District of Southern California* (Super. Ct. L.A. County, No. BS128136)) unless it pays the assessment. The City of Cerritos is not required to pay accrued interest on any delinquent assessment. The Water Replenishment District of Southern California is entitled to costs on appeal.

23

CERTIFIED FOR PUBLICATION.

                                        MALLANO, P. J.

We concur:


CHANEY, J.


JOHNSON, J.